THE STATE, EX REL. THE DISPATCH
PRINTING CO., D.B.A. THE COLUMBUS
DISPATCH, *v.* GOLDEN, JUDGE.
THE STATE, EX REL. THE E. W. SCRIPPS
CO., *v.* GOLDEN, JUDGE.

(Nos. 82AP-587 and -588—Decided
July 14, 1982.)

Messrs. Jones, Day, Reavis & Pogue, Mr. John W. Zeiger and Mr. Michael H. Carpenter, for relator Dispatch Printing Co.

Messrs. Baker & Hostetler, Mr. George W. Hairston, Mr. Kevin L. Shoemaker and Mr. Terence P. Kemp, for relator E. W. Scripps Co.

Mr. Michael Miller, prosecuting attorney, Mr. William B. Shimp, Jr., and Mr. Dale Williams, Jr., for respondent.

Paul A. Scott Co., L.P.A., Mr. Paul A. Scott and Mr. Robert W. Suhr, for defendant Wilson.

McCORMAC, J. The Columbus Dispatch and the Columbus Citizen-Journal commenced original actions in this court on July 12, 1982, to obtain extraordinary relief by prohibition or, in the alternative, mandamus, prohibiting and enjoining enforcement of a municipal court order enjoining law enforcement officers and other persons from releasing for dissemination by any means of public communication information which "could interfere with the defendant's right to a free and fair trial and due process of law" in a pending murder case. Relators vigorously assert that the order is unlawful because it constitutes a constitutionally impermissible prior restraint on their First Amendment freedoms of press and speech.

Michael Lee Wilson was arrested on July 3, 1982, and charged with the aggravated murder of Teresa Wilson, his wife, who was shot and killed on July 3, 1982, in Columbus, Ohio. The case was assigned to Franklin County Municipal Court Judge Sidney H. Golden to exercise preliminary hearing jurisdiction. Prior to preliminary hearing, on July 8, 1982, counsel for defendant moved Judge Golden for an order restraining the police department or its agents from releasing or revealing the contents of its investigation or disclosing the nature of any items obtained as a result of any search warrants to the news media. On the same day, Judge Golden conducted a hearing on the motion. Notice of the hearing was not given to either the Columbus Dispatch or the Columbus Citizen-Journal, although counsel for the Citizen-Journal appeared and opposed the motion after being notified by a reporter that the hearing was taking place. The only evidence presented at the hearing was four newspaper articles, two of which appeared in the Citizen-Journal and two of which appeared in the Columbus Dispatch.

On July 9, 1982, Judge Golden issued the following order:

"It is, therefore, ORDERED, after a full and complete hearing including exhibits from printed media, that the Court hereby enjoins the Detective Bureau of the Columbus Police Department, and all other officers of said department, the municipal and county prosecution, its officers and agents, such order to continue until removed by further order of a court of competent jurisdiction, from passing on any information which could interfere with the defendant's right to a free and fair trial and due process of law.

"The Court further enjoins defendant's counsel, the defendant, or members of his immediate family from circulating any facts which would violate this order.

"Any violation of this order would be subject to the general contempt power of this Court."

On July 12, 1982, Judge Golden filed a supplemental journal entry stating that he had fully and completely considered the standards approved by the American Bar Association relating to the conduct of law enforcement officers in criminal cases before issuing his original order. To clarify any misunderstanding by parties not represented at the hearing as to the definition of "any information which could interfere with the defendant's right to a free and fair trial and due process of

law," the court defined that terminology as follows:

"* * * No law enforcement officers or other persons covered by the original judgment entry filed July 9, 1982, shall release or authorize the release of any extrajudicial statement, for dissemination by any means of public communication, relating to that matter and concerning:

"(1) The prior criminal record (including arrests, indictments, or other charges of crime), or the character or reputation of the accused, except that the officer may make a factual statement of the accused's name, age, residence, occupation, and family status, and if the accused has not been apprehended, may release any information necessary to aid in his apprehension or to warn the public of any dangers he may present;

"(2) The existence or contents of any confession, admission, or statement given by the accused, or the refusal or failure of the accused to make any statement, except that the officer may announce without further comment that the accused denies the charges made against him;

"(3) The performance of any examinations or tests or the accused's refusal or failure to submit to an examination or test;

"(4) The identify [sic], testimony, or credibility of prospectve witnesses, except that the officer may announce the identity of the victim if the announcement is not otherwise prohibited by law;

"(5) The possibility of a plea of guilty to the offense charged or a lesser offense;

"(6) Any opinion as to the accused's guilt or innocence or as to the merits of the case or the evidence in the case.

"It shall be appropriate during, for a law enforcement officer:

"(1) to announce the fact and circumstances of arrest, including the time and place of arrest, resistance, pursuit, and use of weapons;

"(2) to announce the identity of the investigating and arresting officer or agency and the length of the investigation;

"(3) to make an announcement, at the time of seizure of any physical evidence other than a confession, admission, or statement, which is limited to a description of the evidence seized;

"(4) to disclose the nature, substance, or text of the charge, including a brief description of the offense charged;

"(5) to quote from or refer without comment to public records of the court in the case;

"(6) to announce the scheduling or result of any stage in the judicial process;

"(7) to request assistance in obtaining evidence."

The First Amendment to the United States Constitution applicable to the states through the Fourteenth Amendment provides, as pertinent, as follows:

"Congress shall make no law * * * abridging the freedom of speech, or of the press; * * *."

Section 11, Article I, of the Ohio Constitution provides similarly that "no law shall be passed to restrain or abridge the liberty of speech, or of the press."

Judge Golden's orders were not made directly against the press, but were instead directed to those persons from whom the press would logically obtain most of the information that might be the source of news stories pertaining to the investigation of the murder charge against the defendant.

The first issue is whether relators, the two Columbus newspapers, have standing to assert an impairment of First Amendment rights because they were not made parties to the municipal court orders nor were the orders imposed against them. Relators do have standing to assert their First Amendment rights in this prohibition action because, as illustrated by the nature of the orders themselves and by the affidavit of Carl DeBloom, Editor-in-Chief of the Columbus Dispatch, their ability to provide effective coverage of the murder case is severely hampered by the

orders. An order restraining access of a newspaper to its probable and principal sources of information directly impairs or curtails its ability to obtain and publish newsworthy information. See *CBS, Inc.* v. *Young* (C.A. 6, 1975), 522 F. 2d 234; *State, ex rel. Dayton Newspapers,* v. *Phillips* (1976), 46 Ohio St. 2d 457, at 459 [75 O.O.2d 511].

Respondent concedes that the challenged orders constitute a prior restraint against publication of news pertaining to the murder trial of defendant. Thus the issue is whether, under the circumstances of this case, there was constitutional justification for a prior restraint of speech or news otherwise protected by the United States and Ohio Constitutions.

The leading case pertaining to the constitutionality of prior restraint of news of a criminal prosecution is *Nebraska Press Assn.* v. *Stuart* (1976), 427 U.S. 539. In that case, the trial judge, in anticipation of a trial for a multiple murder which had attracted widespread news coverage, restrained newspapers and other news media from publishing or broadcasting accounts of confessions or admissions made by the accused after concluding that there would be intense and pervasive pretrial publicity concerning the case which might impair the accused's right to a fair trial. At the time the trial court restrained the press, the *Nebraska* case had received a great deal more publicity than this case. Moreover, the *Nebraska* judge entered the restraining order at pretrial shortly before he was to try the case in contrast to this case where Judge Golden had only preliminary hearing jurisdiction and entered the order after relatively slight publicity and shortly after inception of the action.

The United States Supreme Court held that, while the First Amendment guarantees of freedom of expression are not absolute, the barriers to prior restraint of First Amendment rights are high and that there is a presumption against prior restraints. The court refused to establish a priority between First Amendment rights and the Sixth Amendment right to a fair trial, but pointed out that in the overwhelming majority of criminal trials, pretrial publicity presents few unmanageable threats to defendant's right of a fair trial. The court said that prior restraints on speech and publication are the most serious and least tolerable infringement of First Amendment rights. Before a prior restraint of news can be ordered, it must be found that the nature and extent of the pretrial news coverage is so prejudicial that measures, such as change of venue, are not likely to be effective to mitigate the effects of unrestrained pretrial publicity. The restraint which is ordered must be effective to prevent the danger of an unfair trial and must not be any broader than necessary. In *Nebraska Press Assn.,* the United States Supreme Court found that the heavy burden that the Constitution imposes as a condition to securing a prior restraint upon the First Amendment rights of the press was not met.

Applying the principles of *Nebraska Press Assn.* to this case, we find that the record is clearly inadequate to support a prior restraint of relators' First Amendment rights.

The only evidence before the municipal court pertaining to post-arrest publicity were four newspaper articles, none of which was sensational or pervasive in itself. The articles were not one-sided and referred to facts or opinions that were both favorable and unfavorable to defendant. In summary, the only news coverage in evidence was not of the nature and extent that would support a finding that the last resort measure of a prior restraint was justified. If a prior restraint were allowed on proof of the type that was offered in this case, a prior restraint could be ordered in virtually every murder case.

Judge Golden also failed to consider to what extent other measures could be

used to mitigate the effect of unrestrained post-arrest publicity. That is understandable as it would be rare, if ever, that a municipal court judge, having only initial and preliminary hearing jurisdiction over a murder case, would be able to properly evaluate the effectiveness of other less restrictive measures, such as change of venue. Generally only the common pleas court judge who is to try the case is able to make that determination. No cases have been cited where a magistrate or municipal court judge, having only probable cause or preliminary hearing jurisdiction, has ordered a prior restraint of the dissemination of news concerning a criminal case. There is a very good reason for the absence of any authority to that effect. It is doubtful that a municipal court judge should ever issue such an order in a felony case.

Even the common pleas court judge is required to explore and reject as ineffective all other alternative measures that would be likely to mitigate the effects of unrestrained pretrial publicity before issuing a prior restraint order. One of the primary measures that is utilized in Ohio to mitigate the unfair effect of pretrial publicity upon a prospective jury is change of venue. The only publicity of record in this case was local. Transfer of venue, a far less restrictive and constitutionally proper measure, will always avoid the effect of pervasive local pretrial publicity which poses a clear and present danger to a fair trial in the county of original venue.

The evidence of post-arrest publicity in this case would be inadequate to support a change of venue, and is completely inadequate to support the prior restraint imposed by the orders.

Before a trial court issues a prior restraint order, it is necessary to hold a hearing and to make a finding that all other measures within the power of the court to insure a fair trial have been found to be unavailing and deficient. *State, ex rel. Beacon Journal Pub. Co.,* v. *Kainrad*

(1976), 46 Ohio St. 2d 349 [75 O.O.2d 435]. Chief Justice O'Neill noted that it was his view that there need never be a restraint or abridgement of freedom of the press in Ohio in a criminal case, although the actual holding of the case left open, as did the holding of *Nebraska Press Assn.,* the possibility as a last resort of a prior restraint of the dissemination of news in a criminal case. Some commentators believe that, as a practical matter, the obstacles to obtaining a judicial order of a prior restraint of news can never be overcome. However, the courts have left open that option in the extreme case which we, together with responsible journalists, hope will never be before us.

Both the initial order of the municipal court and its supplemental order were far more broad than could ever be justified. The initial order restrained the members of the Columbus Police Department, the municipal and county prosecution, its officers and agents, defendant's counsel, the defendant, and members of his immediate family from passing on any information which could interfere with defendant's right to a free and fair trial and due process of law. In the supplemental explanatory order, the municipal court applied the 1968 standards approved by the American Bar Association relating to the conduct of law enforcement officers in criminal cases, which standards were calculated to be used as a self-imposed rule for law enforcement agencies. However, the 1968 American Bar Association standards presented to the trial court by defense counsel were replaced in 1978 by revised standards which allowed the free communication of a much wider range of material than recommended in 1968. The revision came as a result of further study of the problem, as well as from learning gained from subsequent judicial decisions and scholarly commentary. The 1968 recommendation of adoption of a court rule if an agency failed to adopt the standards was deleted by the 1978 recommendations. In summary, the

1978 ABA standards provide that information concerning criminal prosecutions is generally releasable unless its publication would pose a clear and present danger to the fairness of the trial.

"Under the 'clear and present danger' test, a restriction on speech is unjustified unless four criteria are met: (1) The restriction advances a legitimate governmental interest; (2) the public comment poses an extremely serious threat to that interest; (3) the threat is imminent; (4) the restriction is necessary to protect or advance that legitimate governmental interest." The Rights of Fair Trial and Free Press, prepared and published by the standing committee of Association Communications of the American Bar Association, 1981, at page 8.

According to the 1978 ABA standards, the rule which it recommends be adopted by law enforcement agencies is that a law enforcement officer shall not release or authorize the release of any extrajudicial statement for dissemination by any means of public communication if such statement poses a clear and present danger to the fairness of the trial, (except they should never release the existence or contents of any confession, admission, or statement given by the accused or the refusal or failure of the accused to make a statement, and the possibility of a plea of guilty to the offense charged or a lesser offense or other disposition). In short, the 1978 ABA standard recommended for internal use of law enforcement agencies, rather than enforcement by court order, is much more liberal than the broad order authorized by the trial court in accordance with the 1968 ABA standard. Even if the 1978 ABA standard could be imposed by a court upon law enforcement agencies and other persons named in the municipal court order, there has been no showing of a clear and present danger to the fairness of the trial as required by the standard in most instances.

In a Stanford University Law School symposium on fair trial/free press issues following *Nebraska Press Assn.* v. *Stuart,* Rita J. Simon, the Director of the Law and Society Program at the University of Illinois, concluded that experiments to date indicate that, for the most part, juries are able and willing to put aside extraneous information and to base their decisions on the evidence. The researcher pointed to the cases of *Angela Davis, John Connally* and *John Mitchell,* all defendants who were acquitted by a jury despite very substantial adverse publicity. See 29 Stanford L. Rev. 515, 528. The recent case of *John Hinckley* once again demonstrates the fact that jurors have the ability to withstand substantial pretrial publicity adverse to the accused and to return a contrary verdict.

It may sometimes be more difficult to conduct a fair trial in the case where there has been substantial pretrial publicity, but a capable trial judge can use available procedural measures to eliminate unfairness to the defendant in almost all cases. It is important that he do so to afford the defendant a fair trial, not tainted by adverse pretrial publicity. However, the First Amendment rights of freedom of speech and the press are too important to be sacrificed upon an altar of expediency. We have no reticence in declaring our belief that court ordered prior restraint of the publication and dissemination of news or the court ordered restriction of access to legitimate news sources concerning a specific criminal trial is rarely, if ever, a tool to be employed in Ohio.

Finally, issuance of a writ of prohibition is an appropriate remedy in this case as the court against whom the writ is issued exercised judicial power unauthorized by law and the refusal of the writ would result in an injury for which there is no adequate remedy. See *State, ex rel. Beacon Journal Pub. Co.,* v. *Kainrad, supra; State, ex rel. Duganitz,* v. *Court* (1982), 69 Ohio St. 2d 270, at 273 [23 O.O.3d 267].

A writ of prohibition shall be issued against respondent prohibiting him from

enforcing his orders of July 9 and July 12, in the case of *State* v. *Michael Lee Wilson,* Franklin County Municipal Court, Criminal Division, Case No. 14682.

*Writ allowed.*

WHITESIDE, P. J., and REILLY, J., concur.