[Cite as *State ex rel. Toledo Blade Co. v. Henry Cty. Court of Common Pleas*, 125 Ohio St.3d 149, 2010-Ohio-1533.]

THE STATE EX REL. TOLEDO BLADE COMPANY *v.*

HENRY COUNTY COURT OF COMMON PLEAS ET AL.

[Cite as *State ex rel. Toledo Blade Co. v. Henry Cty. Court of Common Pleas*,

125 Ohio St.3d 149, 2010-Ohio-1533.]

*First Amendment — Fair trial — Prohibition — Presumptions against prior restraint not overcome — Writ granted.*

(No. 2010-0161 — Submitted March 31, 2010 — Decided April 13, 2010.)

IN PROHIBITION.

_____

**Per Curiam.**

{¶ 1} This is an original action for a writ of prohibition to prevent a common pleas court and its judge from enforcing a gag order prohibiting the media from reporting about the trial proceedings in one criminal case until a jury is impaneled in a separate criminal case. Because prohibition is an appropriate action to challenge the propriety of the gag order and that order was not supported by sufficient evidence to overcome its presumed unconstitutionality, we grant the writ.

**Facts**

{¶ 2} In *State v. Jayme Schwenkmeyer and David E. Knepley*, Henry Cty. C.P. case No. 08-CR-0033, the state of Ohio charged the defendants with involuntary manslaughter and child endangering after the death of a child. Schwenkmeyer was the child's mother, and Knepley was Schwenkmeyer's boyfriend. The cases arose from a joint indictment, but respondent Judge Keith P. Muehlfeld of respondent Henry County Court of Common Pleas granted the defendants' motions and ordered that they be tried separately.

**{¶ 3}** Judge Muehlfeld originally scheduled Knepley's jury trial to begin on July 20, 2009, with Schwenkmeyer's jury trial to begin on July 27, 2009. On July 20, Judge Muehlfeld granted Schwenkmeyer's motion to prohibit print and broadcast media from reporting about the trial proceedings in Knepley's case until the jury is impaneled for Schwenkmeyer's trial, although he permitted members of the media to have access to the *Knepley* trial. The judge stated in the entry that he considered the order necessary to prevent the tainting of the jury pool in the second case.

**{¶ 4}** Both cases were subsequently rescheduled, and the order of the trials was reversed, with Schwenkmeyer's trial to begin on December 7, 2009, and Knepley's trial to follow a couple months later, on February 8, 2010. On December 2, Knepley moved for an order to, inter alia, "prevent the jury pool in his case from being tainted by hearing or reading any published or broadcast media report of the State v. Schwenkmeyer trial currently scheduled to begin on Monday, December 7, 2009." On December 4, in an order consented to by both the state and Schwenkmeyer, Judge Muehlfeld issued the following gag order:

**{¶ 5}** "Whereas, this Court considers it necessary to issue such an order to prevent the tainting of the jury pool in State v. Knepley; * * *

**{¶ 6}** "* * *

**{¶ 7}** "IT IS ORDERED, ADJUDGED AND DECREED that members of the print and broadcast media shall be permitted access to the trial proceedings in Case number 08CR0033, State v. Schwenkmeyer pursuant to Superintendence Rule 12, HOWEVER any and all print or broadcast media shall be PROHIBITED from the published or broadcast reporting of such trial proceedings until a jury is impaneled for the trial in State v. Knepley."

**{¶ 8}** That same day, Judge Muehlfeld telephoned the local newspapers and local radio station that had sent representatives to earlier proceedings to inform them of the gag order. The judge did not contact the Toledo Blade.

2

**{¶ 9}** Schwenkmeyer's trial began on December 7, but Judge Muehlfeld declared a mistrial and rescheduled it for February 1, 2010, with Knepley's trial remaining scheduled for February 8. The mistrial was unrelated to publicity or similar concerns. On December 11, the judge amended his December 4 gag order to "permit the print or broadcast media to report that a defense motion for mistrial was granted by the Court in the *State v. Schwenkmeyer* trial on December 10, 2009," but reiterated that the gag order remained in effect for Schwenkmeyer's rescheduled February 1 trial.

**{¶ 10}** In mid-January 2010, relator, the Toledo Blade Co., a newspaper publisher, learned of the order, and in a letter e-mailed on January 19, the Blade, through counsel, requested that Judge Muehlfeld reconsider his December 4 gag order prohibiting the media from reporting on the *Schwenkmeyer* trial before a jury is impaneled in *Knepley*.

**{¶ 11}** On January 26, Judge Muehlfeld held a hearing on the Blade's request for reconsideration at which the Blade and the defendants presented argument but no evidence. Knepley's counsel asserted that the gag order issued by the court upon his motion "was absolutely necessary for [his] client to receive a fair trial in his case." He added, "This is a small town with a very interesting case," and if the media were allowed to report on Schwenkmeyer's trial before a jury was impaneled for his trial, "it would taint the jury pool that's already small." The state and Schwenkmeyer noted that they did not object to the court's gag order, and the state opined that Knepley's motion was "fairly compelling."

**{¶ 12}** Judge Muehlfeld specified at the hearing that "it is the narrowness of that window between these trials, that makes this a truly unique case." More particularly, the judge concluded that the press and public's First Amendment rights are "derivative in nature" and "abstract," whereas the defendants' fair-trial rights are "very real interests" that "have a direct impact" upon them. The judge questioned how important the Blade's interest was in reporting the first trial's

proceedings when the Blade did not report about the December 7 trial, and his order only briefly delayed its ability to report about the trial.

{¶ 13} In ratifying the December 4 gag order, the judge made the following findings: "The Court finds that there is a substantial probability that the defendant's right to a fair trial in this case will be prejudiced by the publicity that the Court's orders in this case [were] designed to prevent. The Court further finds that no reasonable alternatives can adequately protect the defendant[']s right to a fair trial under the circumstances unique to this case."

{¶ 14} The judge noted that the cases had generated "considerable public curiosity * * * and media attention," that voir dire in the first *Schwenkmeyer* case established that a good portion of the population knew about the circumstances of the cases, and that it took the court two days and 40 prospective jurors to impanel a jury in the first case. In addition, the judge determined that (1) the option of selecting two juries and sending the second jury home until the start of the second trial would not adequately protect the second defendant's right to a fair trial, because the court could not adequately instruct and control the second jury, (2) a continuance of the second trial was not a reasonable alternative, because Knepley's counsel had moved for the gag order when the trials had previously been scheduled two months apart, and (3) a change of venue would be too costly and would ignore the defendant's and the public's right to have the cases tried in the local venue.

{¶ 15} The next day, on January 27, 2010, the Blade filed this action for a writ of prohibition to prevent respondents, the common pleas court and Judge Muehlfeld, from restraining it "from speaking or publishing information that [it] has lawfully obtained or will lawfully obtain in the course of the criminal proceeding." On January 28, Judge Muehlfeld issued an order denying the Blade's motion for reconsideration and ratifying the December 4 gag order "for the reasons fully stated by the Court from the bench at the conclusion of the

January 26, 2010 oral argument." On that same day, we granted an alternative writ on the Blade's prohibition claim, which stayed the challenged portion of the judge's December 4 and January 28 orders pending our resolution of the case.

{¶ 16} The parties have submitted evidence and briefs, and this case is now before the court for our consideration of the merits. Various amici curiae have also submitted briefs.[1]

### Legal Analysis

#### Request for Oral Argument

{¶ 17} We deny respondents' request for oral argument because they do not specify any reasons supporting it, and the parties' briefs are sufficient to resolve this case. See *State ex rel. Lorain v. Stewart*, 119 Ohio St.3d 222, 2008-Ohio-4062, 893 N.E.2d 184, ¶ 18; *State ex rel. Scioto Downs, Inc. v. Brunner*, 123 Ohio St.3d 24, 2009-Ohio-3761, 913 N.E.2d 967, ¶ 25.

#### Prohibition

{¶ 18} The Blade requests a writ of prohibition to prevent the common pleas court and its judge from enforcing their orders preventing the media from reporting on one criminal trial until the impaneling of a jury in a related, second criminal trial.

{¶ 19} "Prohibition is the appropriate action to challenge trial court orders restricting public access to pending litigation." *State ex rel. Plain Dealer Publishing Co. v. Geauga Cty. Court of Common Pleas, Juv. Div.* (2000), 90 Ohio St.3d 79, 82, 734 N.E.2d 1214. More pertinently, "prohibition is the *only* remedy available to nonparties who wish to challenge an order which restricts the rights of free speech and press of such nonparties," including gag orders that prohibit the media "from publishing certain information lawfully gathered by them in

---

1. The motion for admission pro hac vice of Lucy A. Dalglish, Gregg P. Leslie, and Mara E. Zimmerman by Monica L. Dias is granted.

proceedings which are open to the public." (Emphasis sic.) *State ex rel. News Herald v. Ottawa Cty. Court of Common Pleas, Juv. Div.* (1996), 77 Ohio St.3d 40, 43-44, 671 N.E.2d 5. While amicus curiae Ohio Association of Criminal Defense Lawyers argues that prohibition is inappropriate because the media have an adequate remedy at law by seeking to intervene and appeal the gag order under R.C. 2505.02, this procedure is contrary to the foregoing precedent. Furthermore, the argument is not raised by the parties and will not be considered. *Wellington v. Mahoning Cty. Bd. of Elections*, 117 Ohio St.3d 143, 2008-Ohio-554, 882 N.E.2d 420, ¶ 53. Therefore, the Blade's prohibition action is the appropriate action to challenge Judge Muehlfeld's order restricting the media from publishing or broadcasting reports about the first trial until after the jury in the second trial is impaneled.

*Prior Restraints and Criminal Trials*

{¶ 20} "The phrase 'prior restraint' * * * is a term of art referring to judicial orders or administrative rules that operate to forbid expression before it takes place." 2 Smolla, Smolla and Nimmer on Freedom of Speech (2009) 15-4, Section 15:1; *Seven Hills v. Aryan Nations* (1996), 76 Ohio St.3d 304, 307, 667 N.E.2d 942; see also Black's Law Dictionary (9th Ed.2009) 1314, defining "prior restraint" as a "governmental restriction on speech or publication before its actual expression." The court's gag order here is a prior restraint because it attempts to forbid the media from reporting about the first trial until the jury is impaneled for the second trial, and it was issued before either trial had commenced.

{¶ 21} Although prior restraints are not unconstitutional per se, there is a heavy presumption against their constitutional validity. See *FW/PBS, Inc. v. Dallas* (1990), 493 U.S. 215, 225, 110 S.Ct. 596, 107 L.Ed.2d 603; *Seven Hills*, 76 Ohio St.3d at 307, 667 N.E.2d 942. This is because " 'prior restraints on speech and publication are the most serious and least tolerable infringement on First Amendment rights.' " *Tory v. Cochran* (2005), 544 U.S. 734, 738, 125 S.Ct.

2108, 161 L.Ed.2d 1042, quoting *Nebraska Press Assn. v. Stuart* (1976), 427 U.S. 539, 559, 96 S.Ct. 2791, 49 L.Ed.2d 683. "Prior restraints are simply repugnant to the basic values of an open society" in that they "tend to *encourage* indiscriminate censorship in a way that subsequent punishments do not." (Emphasis sic.) 2 Smolla, Smolla and Nimmer on Freedom of Speech 15:10, Sections 15-14.2-15.14.3.

**{¶ 22}** In the context of court proceedings, the "Free Speech and Free Press Clauses of the First Amendment to the United States Constitution, the analogous provisions of Section 11, Article I of the Ohio Constitution, and the 'open courts' provision of Section 16, Article I of the Ohio Constitution create a qualified right of public access to court proceedings that have historically been open to the public and in which public access plays a significantly positive role." *Plain Dealer*, 90 Ohio St.3d at 82, 734 N.E.2d 1214, citing *In re T.R.* (1990), 52 Ohio St.3d 6, 556 N.E.2d 439, paragraph two of the syllabus. "Criminal trials have historically been open to the public, and public access has always been considered essential to the fair and orderly administration of our criminal justice system." *State ex rel. Natl. Broadcasting Co., Inc. v. Lake Cty. Court of Common Pleas* (1990), 52 Ohio St.3d 104, 108, 556 N.E.2d 1120, overruled in part on other grounds, *State v. Schlee*, 117 Ohio St.3d 153, 2008-Ohio-545, 882 N.E.2d 431, ¶ 10; *Globe Newspaper Co. v. Norfolk Cty. Superior Court* (1982), 457 U.S. 596, 605, 102 S.Ct. 2613, 73 L.Ed.2d 248.

**{¶ 23}** In criminal proceedings, however, the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution secure the criminal defendant's right to a fair trial. *State ex rel. Vindicator Printing Co. v. Watkins* (1993), 66 Ohio St.3d 129, 138, 609 N.E.2d 551. Pervasive, unfair, and prejudicial media coverage of a criminal trial can sometimes deprive a criminal defendant of this constitutional right. *Sheppard v. Maxwell* (1966), 384 U.S. 333, 363, 86 S.Ct. 1507, 16 L.Ed.2d 600.

**{¶ 24}** In the seminal case interpreting the interplay between these two important constitutional rights, the United States Supreme Court struck down gag orders attempting to prevent further publicity about a defendant accused of murdering six members of a family in a small Nebraska town. *Nebraska Press Assn. v. Stuart* (1976), 427 U.S. 539, 570, 96 S.Ct. 2791, 49 L.Ed.2d 683. There, the Supreme Court held that justification for a prior restraint of the media must be evidenced by "(a) the nature and extent of pretrial news coverage; (b) whether other measures would be likely to mitigate the effects of unrestrained pretrial publicity; and (c) how effectively a restraining order would operate to prevent the threatened danger." Id. at 562.

**{¶ 25}** Notwithstanding respondents' suggestion that *Nebraska Press* may no longer be viable because of revolutionary changes in the delivery of information to the public, e.g., the emergence of the Internet, they cite no case that has retreated from the test set forth in that case to evaluate gag orders against the media. Nor have they submitted any evidentiary support for these claims. Although it has been fairly noted that "*Nebraska Press* was decided in 1965 without the Internet or other forms of mass communication now readily available to the public," nevertheless, "if courts base their constitutional interpretations on the rapidly changing concept of technology, * * * our constitutional rights [would be] in the hands of unpredictable technological trends instead of in the hands of sound judicial reasoning." Sidman, Gagging Louisiana's Politicians: The Fifth Circuit Reviews the Constitutionality of Gag Orders Against Trial Participants in *United States v. Brown* (2001), 76 Tul.L.Rev. 233, 244-245. As the Blade mentions, the United States Supreme Court recently observed, "Courts, too, are bound by the First Amendment. We will decline to draw, and then redraw, constitutional lines based on the particular media or technology used * * *." *Citizens United v. Fed. Election Comm.* (2010), __ U.S. __, 130 S.Ct. 876, 891, __ L.Ed.2d __.

**{¶ 26}** In *State ex rel. Beacon Journal Publishing Co. v. Kainrad* (1976), 46 Ohio St.2d 349, 75 O.O.2d 435, 348 N.E.2d 695, a case that preceded *Nebraska Press* by a few weeks, we were faced with a factual situation similar to that here. Two defendants had been jointly indicted for aggravated murder, but upon request of counsel, separate trials were granted. Id. at 349. The trial of one of the defendants was in progress when the judge presiding over the second defendant's trial, which had not yet begun, issued an order prohibiting the media from publishing any statements made in the first trial concerning the claimed participation of the second defendant in any criminal activity. Id. at 349. The judge expressed concern that the publicity may jeopardize the second defendant's right to an impartial jury. Id. at 349-350.

**{¶ 27}** We set forth the following test for prior restraints in which the defendant's request for a fair trial is asserted as the basis for the order:

**{¶ 28}** "An order not to publish cannot be considered unless the circumstances are imperative, and it appears clearly in the record that a defendant's right to a fair trial will be jeopardized and that there is no other recourse within the power of the court to protect that right or minimize the danger to it.

**{¶ 29}** "Before issuing any such order not to publish, it is obligatory upon the court to hold a hearing and make a finding that all other measures within the power of the court to insure a fair trial have been found unavailing and deficient." Id. at 352.

**{¶ 30}** We held, "Where the constitutional right of a criminal defendant to a fair trial can be protected by the traditional methods of voir dire, continuances, changes of venue, jury instructions or sequestration of the jury, the press and public cannot be excluded from a criminal trial or hearing and no order can be made which prohibits the publishing of news reports about statements made or testimony given during such proceedings until all other measures within the

power of the court to insure a fair trial have been found to be unavailing or deficient." Id. at syllabus.

{¶ 31} Although we decided *Kainrad* before the United States Supreme Court's decision in *Nebraska Press*, we have applied it thereafter. See *Natl. Broadcasting Co.*, 52 Ohio St.3d at 107, 556 N.E.2d 1120.[2] And the criteria announced in these cases for determining the propriety of a prior restraint are consistent.

{¶ 32} The Blade initially asserts that the foregoing evaluation of criteria does not apply to Judge Muehlfeld's gag order, because even though media representatives were to be present, the order will prevent the media from immediately reporting about the *Schwenkmeyer* trial and is therefore unconstitutional per se. The Blade cites *News Herald*, 77 Ohio St.3d at 44, 671 N.E.2d 5; *Craig v. Harney* (1947), 331 U.S. 367, 374, 67 S.Ct. 1249, 91 L.Ed. 1546; and *Natl. Broadcasting Co.*, 52 Ohio St.3d at 113, 556 N.E.2d 1120, in support of its assertion.

{¶ 33} Nevertheless, this precedent is inapplicable here because the first trial that is the subject of Judge Muehlfeld's gag order has not yet commenced. Cf. *Craig*, 331 U.S. at 368, 67 S.Ct. 1249, 91 L.Ed. 1546 (a trial court judge held a newspaper publisher and reporter in criminal contempt for newspaper articles about what had *previously transpired* in a forcible entry and detainer); *Nebraska Press*, 427 U.S. at 567-568, 96 S.Ct. 2791, 49 L.Ed.2d 683, (a trial court order entered *after* an open preliminary hearing, which order purported to prevent reporting of certain statements made at the hearing, was unconstitutional); *Natl. Broadcasting Co.*, 52 Ohio St.3d at 113, 556 N.E.2d 1120 ("*if the jurors' names are revealed in open court*, or if relators get them from publicly available court

---

2. In *Natl. Broadcasting Co.*, 52 Ohio St.3d at 108, 556 N.E.2d 1120, we applied a similar test to evaluate orders preventing court personnel, attorneys, and law enforcement from making extrajudicial public communications. See also *T.R.*, 52 Ohio St.3d 6, 556 N.E.2d 439. This type of gag order is not at issue here.

records, the judge cannot prevent relators from publishing them by an order invoking prior restraint, even if he holds a hearing and makes findings sufficient to satisfy *Kainrad.*" [Emphasis added]).

{¶ 34} Therefore, in the absence of the first trial having already commenced and the press having access to it, the *Nebraska Press* and *Kainrad* criteria apply to evaluate the propriety of the gag order issued here. This conclusion comports with the United States Supreme Court's view that it "has frequently denied that First Amendment rights are absolute and has consistently rejected the proposition that a prior restraint can never be employed." *Nebraska Press*, 427 U.S. at 570, 96 S.Ct. 2791, 49 L.Ed.2d 683.

*Application of Criteria to Gag Order*

{¶ 35} After applying the pertinent criteria to the gag order here, we hold that the order is unconstitutional for the reasons that follow.

{¶ 36} First, the order was not supported by evidence introduced on the record at a hearing before the judge. In *Nebraska Press*, 427 U.S. at 562, 96 S.Ct. 2791, 49 L.Ed.2d 683, the Supreme Court emphasized that the propriety of the prior restraint must be examined based on "the evidence before the trial judge when the order was entered." "The *Nebraska [Press]* test must be supported by evidence, not speculation." *State ex rel. Chillicothe Gazette, Inc. v. Ross Cty. Court of Common Pleas* (1982), 2 Ohio St.3d 24, 25, 2 OBR 570, 442 N.E.2d 747. There is no evidence of any evidentiary hearing here that preceded the court's issuance of its December 4, 2009 gag order. And when Judge Muehlfeld reaffirmed it upon the Blade's request for reconsideration following a hearing on January 26, there was no evidence submitted. In the absence of any properly introduced evidence, " 'there is no reason for a trial court to * * * [conclude] that there will be prejudicial publicity * * * and to presume that such publicity will create a * * * threat to the administration of justice * * *.' " Id. at 25, quoting

11

*State ex rel. Dayton Newspapers, Inc. v. Phillips* (1976), 46 Ohio St.2d 457, 468-469, 75 O.O.2d 511, 351 N.E.2d 127.

{¶ 37} Second, Judge Muehlfeld's analysis proceeded from the erroneous premise that a criminal defendant's constitutional right to a fair trial should be accorded priority over the media's constitutional rights of free speech and press. As Justice Black cogently observed more than half a century ago in *Bridges v. California* (1941), 314 U.S. 252, 260, 62 S.Ct. 190, 86 L.Ed. 192, "free speech and fair trials are two of the most cherished policies of our civilization, and it would be a trying task to choose between them." "The authors of the Bill of Rights did not undertake to assign priorities as between First Amendment and Sixth Amendment rights, ranking one as superior to the other." *Nebraska Press*, 427 U.S. at 561, 96 S.Ct. 2791, 49 L.Ed.2d 683. "When there is a conflict between the First and the Sixth Amendment rights, as in the instant case, the trial court is required to act to resolve that conflict by protecting both the First and the Sixth Amendment rights when, as here, that can be done in a reasonable and lawful way." *Dayton Newspapers*, 46 Ohio St.2d at 464, 75 O.O.2d 511, 351 N.E.2d 127. The judge's refusal to accord equal importance and priority to the media's First Amendment rights was thus plainly erroneous.

{¶ 38} Third, Judge Muehlfeld mistakenly ruled that the gag order was justified in part because of its limited duration. As Judge Sotomayor of the United States Court of Appeals for the Second Circuit observed, a "prior restraint is not constitutionally inoffensive merely because it is temporary." *United States v. Quattrone* (C.A.2, 2005), 402 F.3d 304, 310; *Procter & Gamble Co. v. Bankers Trust Co.* (C.A. 6, 1996), 78 F.3d 219, 221, quoting *In re Providence Journal Co.* (C.A.1, 1986), 820 F.2d 1342, 1351 ("even a temporary restraint on pure speech is improper 'absent the most compelling circumstances' "). "[T]he element of time is not unimportant if press coverage is to fulfill its traditional function of

bringing news to the public promptly." *Nebraska Press*, 427 U.S. at 561, 96 S.Ct. 2791, 49 L.Ed.2d 683.

**{¶ 39}** Fourth, Judge Muehlfeld overstated the prejudicial effect of any pretrial publicity. In his on-the-record findings at the January 26 hearing, he merely noted that the cases had generated considerable media attention and that his voir dire in the first *Schwenkmeyer* case had taken two days and 40 prospective jurors before a jury was impaneled. " '[P]retrial publicity — even pervasive, adverse publicity — does not inevitably lead to an unfair trial.' " *State v. Coley* (2001), 93 Ohio St.3d 253, 258, 754 N.E.2d 1129, quoting *Nebraska Press*, 427 U.S. at 554, 96 S.Ct. 2791, 49 L.Ed.2d 683. In effect, in the absence of evidence submitted to the court, the judge relied on conclusory, speculative assertions to support his finding that publicity of the *Schwenkmeyer* trial could deprive Knepley of a fair trial. This the judge could not lawfully do. See *Presley v. Georgia* (2010), __ U.S. __, 130 S.Ct. 721, 725, __ L.Ed.2d __, quoting *Press-Enterprise Co. v. Superior Court of California, Riverside Cty.* (1986), 478 U.S. 1, 15, 106 S.Ct. 2735, 92 L.Ed.2d 1 (" 'The First Amendment right of access cannot be overcome by the conclusory assertion that publicity might deprive the defendant of [the right to a fair trial]' ").

**{¶ 40}** Fifth, Judge Muehlfeld did not even specify that all other alternatives to assure Knepley a fair trial short of the gag order were unavailing. In his January 28 entry reaffirming the gag order and his January 26 on-the-record statement of reasons for the ratification of that order, the judge did not even mention alternatives like voir dire and jury instructions in the *Knepley* case or sequestration of the *Knepley* jurors while the *Schwenkmeyer* trial proceeded. Although he has now attempted to remedy this defect with after-the-fact evidence introduced in this writ action, this evidence was not introduced at the January 26 hearing and is not properly before us. See *In re Guardianship of Hollins*, 114 Ohio St.3d 434, 2007-Ohio-4555, 872 N.E.2d 1214, ¶ 30; cf. *State ex rel. Stoll v.*

*Logan Cty. Bd. of Elections*, 117 Ohio St.3d 76, 2008-Ohio-333, 881 N.E.2d 1214, ¶ 40.

**{¶ 41}** Finally, Judge Muehlfeld dismissed some alternatives for reasons that are not supported by evidence or precedent. The judge rejected a change of venue because he considered it too costly and because it would infringe upon the defendant's right to be tried in the county in which the offense was committed. There was no evidence submitted at the hearing on the cost of changing venue, and even if we were to credit the prosecutor's and judge's affidavits filed in this writ action about the smaller jury pool in Henry County and the costs involved in requiring travel to a distant county, the result would not be altered. Henry County borders Lucas County, a populous county, which would offer a more expansive jury pool that would be less likely to be impacted by the pretrial publicity. We have also rejected a similar argument concerning costs of changing venue as a reason to justify a prior restraint. *Dayton Newspapers*, 46 Ohio St.2d at 466, 75 O.O.2d 511, 351 N.E.2d 127. And the common pleas court is authorized to order the appropriation of reasonable and necessary expenses to cover any additional costs. See, e.g., *State ex rel. Hague v. Ashtabula Cty. Bd. of Commrs.*, 123 Ohio St.3d 489, 2009-Ohio-6140, 918 N.E.2d 151, ¶ 17. Nor does Knepley's constitutional right to be tried by an "impartial jury of the county in which the offense is alleged to have been committed" under Section 10, Article I of the Ohio Constitution preclude a change of venue. R.C. 2901.12(K) and Crim.R. 18(B) authorize the court to sua sponte change venue when it appears that a fair and impartial trial cannot be held where the action is pending.

**{¶ 42}** The judge also rejected the continuance of the *Knepley* trial based solely on the fact that Knepley's counsel had previously requested the same gag order when the trials had been scheduled two months apart. Again, the judge did not rely on any evidence that a continuance might minimize any prejudicial pretrial publicity resulting from press reports about the *Schwenkmeyer* trial. See

*State v. Warner* (1990), 55 Ohio St.3d 31, 47, 564 N.E.2d 18 ("In order to dissipate the effects of adverse pretrial publicity, the judge may continue the case until the threat abates").

{¶ 43} For all of these reasons, Judge Muehlfeld's gag order is patently unconstitutional.

### Conclusion

{¶ 44} Therefore, we grant the writ of prohibition to prevent the common pleas court and judge from enforcing the gag order restraining the media in general and the Blade in particular from reporting on the *Schwenkmeyer* trial before the jury is impaneled in the *Knepley* trial.

Writ granted.

PFEIFER, ACTING C.J., and LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

The late CHIEF JUSTICE THOMAS J. MOYER did not participate in the decision in this case.

———————————

Fritz Byers and Scott Ciolek, for relator.

Rayle, Matthews & Coon and Max E. Rayle; and Ronald J. Kozar, for respondents.

Lucy A. Dalglish, Gregg P. Leslie, and Mara E. Zimmerman, urging granting of the writ for amicus curiae Reporters Committee for Freedom of the Press.

Michael T. Honohan, Carrie L. Davis, and Angela Barstow, urging granting of the writ for amicus curiae American Civil Liberties Union of Ohio Foundation, Inc.

Stephen P. Hardwick, urging denial of the writ for amicus curiae Ohio Association of Criminal Defense Lawyers.

Arthur, O'Neil, Mertz, Michel & Brown Co., L.P.A., and Clayton J. Crates, urging denial of the writ for amicus curiae David E. Knepley.

_____