The STATE ex rel. THE CINCINNATI ENQUIRER

v.

BRONSON, Judge, et al.

[Cite as State ex rel. Cincinnati Enquirer v. Bronson, 191 Ohio App.3d 160, 2010-Ohio-5315.]

Court of Appeals of Ohio, Twelfth District, Warren County.

No. CA2010-05-044.

Decided Nov. 1, 2010.

162

Graydon, Head & Ritchey, L.L.P., and John C. Greiner, for petitioner, the Cincinnati Enquirer.

John D. Smith and Andrew P. Meier, for respondent Judge Neal B. Bronson.

Warren J. Ritchie and Thomas T. Keating, for respondent Melissa Brock.

---

Per Curiam.

{¶ 1} The above cause is before the court pursuant to a petition filed by relator, the Cincinnati Enquirer, seeking a writ of prohibition against respondent the Honorable Neal B. Bronson and a writ of mandamus against respondent Melissa Brock.

{¶ 2} This original action arose out of a criminal case in Warren County, *State v. Ryan Widmer,* case No. 08 CR 25254. Ryan Widmer was accused of drowning his wife in the bathtub of their Morrow home. Judge Bronson, sitting on the Warren County Court of Common Pleas, presided over the trial. The Cincinnati Enquirer's May 7, 2010 complaint for a writ of prohibition and a writ of mandamus was filed three days before the trial commenced on May 10, 2010.

{¶ 3} The first facet of the Enquirer's petition for a writ of prohibition involves the publication's request to attend the anticipated jury view of the crime scene. Prior to the start of the trial, Enquirer reporter Janice Morse sent an e-mail to Warren County court administrator Scott McVey requesting permission to attend the jury view of the Widmer home. McVey responded via e-mail and relayed Judge Bronson's instruction that the Enquirer could observe the jury view at a distance only. McVey also indicated that Judge Bronson would defer to the homeowner on whether to permit members of the news media access to the home once the jury departed.

{¶ 4} Upon receiving the above response, counsel for the Enquirer delivered a written letter to McVey expressing the publication's objections to the jury-view restrictions set forth by Judge Bronson. Replying by letter, McVey indicated that the court refused to compel the homeowner to permit the media access to the home. The letter further expressed the court's position that the media's presence inside the home alongside the jury would not be "feasible" or "logistically functional." No hearing was ever held on the Enquirer's request to attend the jury view.

{¶ 5} The second facet of the Enquirer's prohibition petition, as well as its petition for a writ of mandamus, entails the publication's request for production of certain records. Prior to the start of the Widmer trial, the Enquirer submitted an informal request to Melissa Brock, director of human resources for Hamilton Township, seeking access to the personnel file of Detective Lieutenant Jeff Braley. The record before us does not disclose Detective Braley's role in the Widmer case.

{¶ 6} Warren Ritchie, law director for Hamilton Township, answered the Enquirer's request and indicated that the township would not produce the requested records due to a "gag" order issued by Judge Bronson on April 29, 2010. The order prohibited the parties to the case, their counsel, employees, and witnesses, as well as employees of the court and the clerk of courts, from discussing or disseminating personnel files, records, or related documents pertaining to Detective Braley or any other witness in the case. Sometime after the gag order was lifted, the township provided Detective Braley's personnel records to the Enquirer. No hearing was ever conducted on the Enquirer's records request.

{¶ 7} On May 7, 2010, the Enquirer filed the instant action. In its complaint, the Enquirer requests a writ of prohibition restraining Judge Bronson from prohibiting press access to any jury view in the Widmer trial and from barring production of Detective Braley's personnel records. In addition, the Enquirer seeks a writ of mandamus requiring Brock to produce Detective Braley's records.

{¶ 8} At the outset, we note that we cannot dispose of the issues presented in this action based upon the doctrine of mootness. While the trial has come and gone, the issues at hand are capable of repetition, yet evading review. *State ex rel. Beacon Journal Publishing Co. v. Donaldson* (1992), 63 Ohio St.3d 173, 175, 586 N.E.2d 101. That is, "(1) the challenged action is too short in its duration to be fully litigated before its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *State ex rel. Calvary v. Upper Arlington* (2000), 89 Ohio St.3d 229, 231, 729 N.E.2d 1182. We thus proceed to the merits of the parties' arguments.

{¶ 9} Prohibition is an extraordinary writ issued by a higher court to a lower court to restrain the unauthorized exercise of judicial power. *State ex rel. Daily Reporter v. Franklin Cty. Court of Common Pleas* (1990), 56 Ohio St.3d 145, 145, 565 N.E.2d 536. Prohibition is the proper action to dispute a trial court order that impedes public access to court proceedings. *State ex rel. Plain Dealer Publishing Co. v. Geauga Cty. Court of Common Pleas, Juvenile Div.* (2000), 90 Ohio St.3d 79, 82, 734 N.E.2d 1214. In fact, the Ohio Supreme Court recently reaffirmed that " 'prohibition is the *only* remedy available to nonparties who wish to challenge an order which restricts the rights of free speech and press of such nonparties.' " (Emphasis sic.) *State ex rel. Toledo Blade Co. v. Henry Cty. Court of Common Pleas,* 125 Ohio St.3d 149, 2010-Ohio-1533, 926 N.E.2d 634, ¶ 19, quoting *State ex rel. News Herald v. Ottawa Cty. Court of Common Pleas, Juvenile Div.* (1996), 77 Ohio St.3d 40, 43–44, 671 N.E.2d 5.

{¶ 10} To warrant a writ of prohibition, the relator must establish the existence of three prerequisites: (1) the court or officer against whom the writ is sought is about to exercise judicial or quasi-judicial power, (2) the exercise of that power is clearly unauthorized by law, and (3) denial of the writ will cause injury for which there is no adequate remedy in the ordinary course of law. *McAuley v. Smith* (1998), 82 Ohio St.3d 393, 395, 696 N.E.2d 572.

{¶ 11} The right of the general public (and, by extension, the press) to attend criminal proceedings is a fundamental right guaranteed by the First Amendment to the United States Constitution. *Richmond Newspapers v. Virginia* (1980), 448 U.S. 555, 579–580, 100 S.Ct. 2814, 65 L.Ed.2d 973. See also *State ex rel. Beacon Journal Publishing Co. v. Bond,* 98 Ohio St.3d 146, 2002-Ohio-7117, 781 N.E.2d 180, ¶ 14. This right of access promotes both the fair administration of justice and the public's confidence in the judicial system. *Press–Enterprise Co. v. Superior Court* (1986), 478 U.S. 1, 7, 106 S.Ct. 2735, 92 L.Ed.2d 1 *("Press–Enterprise II")*; *State ex rel. Dayton Newspapers, Inc. v. Phillips* (1976), 46 Ohio St.2d 457, 467, 75 O.O.2d 511, 351 N.E.2d 127.

■■ {¶ 12} While the public's right of access has been explicitly extended to pretrial proceedings, it is not absolute. *State ex rel. The Repository, Div. of Thompson Newspapers, Inc. v. Unger* (1986), 28 Ohio St.3d 418, 421, 28 OBR 472, 504 N.E.2d 37. Rather, a *qualified* right of access attaches to a proceeding only if (1) the place and process have historically been open to the press and the general public, and (2) public access plays a significant positive role in the functioning of the particular process in question. *Press–Enterprise II* at 8–9, 106 S.Ct. 2735, 92 L.Ed.2d 1. If these elements are met, the public retains a qualified right of access to the proceeding and can be banned only under limited circumstances. *Unger* at 421.

■ {¶ 13} In order to avoid impinging upon these constitutional mandates, the Ohio Supreme Court has observed that "[a]ppropriate deference is given to [the public's] right of access when the petitioner is given an opportunity to be heard at a proceeding where he may voice his objections." Id. Moreover, "[t]he presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Id., quoting *Press–Enterprise Co. v. Superior Court* (1984), 464 U.S. 501, 510, 104 S.Ct. 819, 78 L.Ed.2d 629 (*"Press–Enterprise I"*).

■■ {¶ 14} Applying the above principles of law, we hold that when a member of the news media requests to be present at a jury view, the trial court must conduct a hearing, make appropriate findings, and enter its decision on the record. *State ex rel. Natl. Broadcasting Co., Inc. v. Lake Cty. Court of Common Pleas* (1990), 52 Ohio St.3d 104, 108, 556 N.E.2d 1120, overruled on other grounds by *State v. Schlee*, 117 Ohio St.3d 153, 2008-Ohio-545, 882 N.E.2d 431. In order to support closure, the trial court must find that (1) closure is essential to preserve a higher or overriding interest and (2) the closure order is narrowly tailored to serve that interest. *Press–Enterprise I* at 510, 104 S.Ct. 819, 78 L.Ed.2d 629. If the interest advanced is the defendant's right to a fair trial, closure may be ordered only where the court finds that (1) there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent and (2) reasonable alternatives to closure cannot adequately protect the defendant's fair-trial rights. *Press–Enterprise II* at 14, 106 S.Ct. 2735, 92 L.Ed.2d 1. An oral decision on the record is sufficient to comply with these directives.

{¶ 15} We note that requiring a hearing and findings on the record serves a number of purposes. This process affords the media and all interested parties an opportunity to be heard and to voice their respective concerns on the record so that the trial court is fully informed before making its decision. See *Unger*, 28 Ohio St.3d at 421, 28 OBR 472, 504 N.E.2d 37. Moreover, the provision for a

hearing and findings at the trial-court level provides a reviewing court with a basis for assessing the propriety of the trial court's closure order. Cf. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 280, quoting *Bell v. Jarvis* (C.A.4, 1999), 198 F.3d 432, 441. Finally, this process serves to ensure that the trial court does not exceed the bounds of the law in restricting or closing criminal proceedings. Cf. *Phillips*, 46 Ohio St.2d at 487, 75 O.O.2d 511, 351 N.E.2d 127, fn. 7.

{¶ 16} Next, we address the Enquirer's request for Detective Braley's personnel records, which comprises the second facet of the Enquirer's prohibition petition as well as the publication's mandamus petition. As stated, Hamilton Township refused to produce Detective Braley's records while the gag order remained in place. In an e-mail dated May 21, 2010, law director Ritchie conveyed Detective Braley's personnel file to the Enquirer's legal counsel in redacted form. Blotted out were four items of information that the detective claimed had been fraudulently added to his file. Eventually, the records were surrendered to the Enquirer in unredacted form.

{¶ 17} Although the Enquirer prays for prohibition and mandamus with regard to Detective Braley's records, we shall confine the issue to the publication's request for a writ of mandamus. As the Ohio Supreme Court has observed, "mandamus is the appropriate vehicle to compel disclosure of specific records requested under the Ohio Public Records Act * * *." *Bond*, 98 Ohio St.3d 146, 2002-Ohio-7117, 781 N.E.2d 180, at ¶ 50. A writ of mandamus compels a public officer or agency to perform a formal act that the officer or agency has a clear legal duty to perform. *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 117 Ohio St.3d 480, 2008-Ohio-1593, 884 N.E.2d 1075, ¶ 9.

{¶ 18} Mandamus will lie when the relator establishes the existence of three conditions: (1) the relator has a clear legal right to the relief requested, (2) the respondent has a clear legal duty to perform the official act requested, and (3) the relator has no adequate remedy in the ordinary course of law. *State ex rel. Boardwalk Shopping Ctr., Inc. v. Cuyahoga Cty. Court of Appeals* (1990), 56 Ohio St.3d 33, 34, 564 N.E.2d 86.

{¶ 19} Ohio's Public Records Act, codified at R.C. 149.43, mandates full access to public records upon request unless the requested records fall within one of the exceptions specifically enumerated in the act. *State ex rel. Lucas Cty. Bd. of Commrs. v. Ohio Environmental Protection Agency* (2000), 88 Ohio St.3d 166, 170, 724 N.E.2d 411. A "public record" is a record kept by any public office. R.C. 149.43(A)(1); *State ex rel. WBNS TV, Inc. v. Dues*, 101 Ohio St.3d 406, 2004-Ohio-1497, 805 N.E.2d 1116, ¶ 25. Because the act must be liberally construed in

favor of broad access, any doubts must be settled in favor of disclosure. *State ex rel. Strothers v. Wertheim* (1997), 80 Ohio St.3d 155, 156, 684 N.E.2d 1239.

{¶ 20} We believe that the Braley records issue is amenable to the same disposition applied to the Enquirer's request to attend the jury view. That is, when a member of the news media requests production of records alleged to be exempt from disclosure, the trial court must hold a hearing, make appropriate findings, and enter its decision on the record. *Natl. Broadcasting Co.*, 52 Ohio St.3d at 108, 556 N.E.2d 1120. Once again, an oral decision is sufficient. In order to justify withholding the records, the court must find that the records are exempt from disclosure under one of the exceptions specified in R.C. 149.43(A)(1)(a) through (aa). *Lucas Cty. Bd. of Commrs.* at 170.

{¶ 21} To conclude, we grant the Enquirer's petition for a writ of prohibition to the extent that Judge Bronson is prohibited from imposing restrictions on a jury view without affording all interested parties the opportunity to be heard before the order is entered. Should a member of the news media request to attend a jury view in the future, the trial court must hold a hearing and make findings on the record to support its decision.

{¶ 22} Similarly, we grant the Enquirer's petition for a writ of mandamus to the extent that the trial court is compelled to conduct a hearing and make findings on the record before exempting public records from disclosure in the future. In view of the fact that the Enquirer has already received Detective Braley's personnel records, the relief we grant conforms to the Enquirer's request at oral argument that a hearing be conducted before access to public records is denied.

Writs granted.

YOUNG, P.J., and RINGLAND and HENDRICKSON, JJ., concur.