[Cite as *State ex rel. Cincinnati Enquirer v. Oda*, 2018-Ohio-704.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| STATE OF OHIO EX REL. THE CINCINNATI ENQUIRER, A DIVISION OF GANNETT GP MEDIA, INC., | : | |
| | : | CASE NO. CA2017-08-130 |
| Petitioner, | : | |
| | | O P I N I O N |
| | : | 2/26/2018 |
| - vs - | : | |
| | : | |
| HONORABLE DONALD E. ODA II, | : | |
| Respondent. | : | |


ORIGINAL ACTION IN PROHIBITION


John C. Greiner and Darren W. Ford, 1900 Fifth Third Center, 511 Walnut Street, Cincinnati, Ohio 45202, for petitioner

D. Vincent Faris, Clermont County Prosecuting Attorney, and G. Ernie Ramos, Jr., Assistant Prosecuting Attorney, 101 East Main Street, Batavia, Ohio 45103, for respondent


**S. POWELL, P.J.**

{¶ 1} This case involves a review of a petition for a writ of prohibition submitted to this court on December 13, 2017. Petitioner, The Cincinnati Enquirer, a division of Gannett, GP Media, Inc. ("Enquirer"), filed its petition with this court on August 28, 2017. Respondent, the Honorable Donald E. Oda II ("Judge Oda"), filed his answer to the Enquirer's petition on September 21, 2017. The Enquirer then filed its brief in support of its

petition on October 10, 2017. On November 1, 2017, Judge Oda filed his response brief in opposition to the Enquirer's petition. The Enquirer subsequently filed its reply brief in support of its petition on November 13, 2017. Oral arguments were then held before this court on December 13, 2017.

{¶ 2} The matter now properly before this court, the Enquirer seeks a writ of prohibition to prevent Judge Oda from enforcing the order on courtroom decorum and pretrial publicity he issued on August 18, 2017 in the case of *State v. Richardson*, Warren C.P. Case No. 17CR33292. For the reasons outlined below, the Enquirer's petition for a writ of prohibition is hereby granted.

### The Parties

{¶ 3} The Enquirer is a newspaper of general circulation in Cincinnati, Ohio. Judge Oda is a judge for the Warren County Court of Common Pleas who is presiding over the *Richardson* case. In that case, the 18-year-old female defendant is charged with aggravated murder, involuntary manslaughter, endangering children, tampering with evidence, and abuse of a corpse after it was alleged she killed her baby and buried the corpse in the backyard of her Warren County home.

### Facts and Procedural History

{¶ 4} On August 9, 2017, Judge Oda issued an interim order on courtroom decorum and pretrial publicity restricting the parties in the *Richardson* case from making or participating in any extrajudicial statement that they would expect to be disseminated by means of public communication, whether written, broadcast, and/or electronic media, as well as social media. In issuing this interim order, Judge Oda sua sponte determined that there was a "substantial probability" that a fair trial would be compromised and potential jurors would be prejudiced if the parties involved in the case were not prohibited from further commenting on the case. Continuing, Judge Oda then stated as part of the interim order:

The Court notes that the coverage of this case by the press has been remarkably fair. Both sides have expressed their positions, and neither side appears to have 'the upper hand' when it comes to news coverage. The public commentary and the right that every American now seems to have to weigh in on social media regardless of their knowledge of the facts are largely irrelevant. People can think what they want, say what they want, tweet or post what they want – the Court is confident a Warren County jury has the discernment to disregard this information and focus on the facts. However, witnesses talking about the facts of the case in advance of trial, press releases, attorneys talking about evidence, lack of evidence or trial strategy substantially impairs the Court's ability to conduct a fair and impartial trial.

{¶ 5} On August 14, 2017, the Enquirer filed objections to Judge Oda's interim order alleging there was no evidence in the record to indicate such an order was necessary so as to ensure the defendant received a fair trial. Three days later, on August 17, 2017, Judge Oda presided over a hearing on the Enquirer's objections. During this hearing, Judge Oda – without prompting from any of the parties present at the hearing – admitted a single exhibit, Exhibit A, a list of links to online news articles reporting on the charges against the defendant, as well as copies of the corresponding news articles. These news articles were printed from websites belonging to both local and national media outlets including, but not limited to, WLWT, WCPO, and Fox 19 from Cincinnati, WDTN and WHIO from Dayton, Fox 8 from Cleveland, and CBS News. Aside from Exhibit A, no other evidence was presented at this hearing from the state, from the defendant, or from the Enquirer.

{¶ 6} On August 18, 2017, Judge Oda issued a decision upholding the prohibitions laid out in his previous interim order, which, as noted above, restricted the parties from making or participating in any extrajudicial statement that they would expect to be disseminated by means of public communication, whether written, broadcast, and/or electronic media, as well as social media. Judge Oda also restricted the parties from (1) publicly discussing or disseminating evidence gathered in the case, (2) making public

statements about the case, and/or (3) posting or commenting upon any aspect of the case on social media.

{¶ 7} In issuing this decision, Judge Oda found there had been substantial news coverage of the case and a significant amount of pretrial publicity. This media coverage included, among other things: (1) statements of the attorneys concerning their opinions and/or observations concerning the allegations, as well as facts that may or may not be presented at trial, evidence, possible motives, and trial strategy; (2) statements of investigators and prospective witnesses regarding facts in connection with the case that may or may not be true and/or admissible; and, (3) statements from the parties concerning the case. In so holding, Judge Oda determined that such statements "are a serious and imminent threat to the jury pool and significantly compromise the Court's ability to conduct a fair and impartial trial."

{¶ 8} Similar to his interim order, Judge Oda then stated:

> The news coverage, to this point, has been remarkably fair. It appears to be balanced to the extent both the State of Ohio and the Defendant have had the opportunity to comment on their side of the case and have been quoted by the media. However, there is a substantial probability the fairness of the proceedings will be compromised and potential jurors will be prejudiced by extrajudicial statements made by Parties to the Case. Such statements are a clear and present danger to the right of the State of Ohio, the Defendant and the public to a fair trial.

{¶ 9} As noted above, on August 28, 2017, the Enquirer filed a petition with this court seeking a writ of prohibition against Judge Oda. In support of its petition, the Enquirer alleged that the order at issue, just like the interim order before it, was deficient and legally defective in that it lacked the requisite findings supported by evidence in the record indicating such an order was necessary to ensure the defendant received a fair trial. In response, on September 21, 2017, Judge Oda filed an answer generally denying the Enquirer's allegations. After the parties filed their respective briefings with this court on

- 4 -

October 10, November 1, and November 13, 2017, and following oral arguments, the matter was submitted to this court for review on December 13, 2017.

**Writ of Prohibition**

{¶ 10} Prohibition is an extraordinary writ issued by a higher court to a lower court to restrain the unauthorized exercise of judicial power. *State ex rel. Daily Reporter v. Court of Common Pleas of Franklin Co.* 56 Ohio St.3d 145 (1990). There is no dispute that a writ of prohibition is the proper procedure through which the Enquirer may challenge the order issued by Judge Oda in this case. There is also no dispute that the Enquirer has standing to seek such a writ against Judge Oda. However, because a writ of prohibition should be issued with great caution and only in cases of extreme necessity, the Enquirer bears a three-part burden to demonstrate that it is entitled to the requested writ. *Roberts v. Winkler*, 176 Ohio App.3d 685, 2008-Ohio-2843, ¶ 11 (1st Dist.). Therefore, to be entitled to such a writ, the Enquirer must establish that: (1) Judge Oda is about to exercise his judicial power, (2) the exercise of that power is clearly unauthorized by law, and (3) denial of the writ will cause injury for which there is no adequate remedy in the ordinary course of law. *State ex rel. Cincinnati Enquirer v. Bronson*, 191 Ohio App.3d 160, 2010 Ohio 5315, ¶ 10 (12th Dist.).

**Freedom of the Press**

{¶ 11} It is well established that media outlets – whether newspaper, radio, television, online, etc. – have a clear constitutional right to gather news. *Branzburg v. Hayes*, 408 U.S. 665, 681, 92 S.Ct. 2646 (1972) (news gathering is constitutionally protected for "without some protection for seeking out the news, freedom of the press could be eviscerated"). That right, however, is by no means absolute, *State ex rel. Dayton Newspapers, Inc. v. Phillips*, 46 Ohio St. 2d 457, 533 (1976), and must be balanced with the defendant's right to a fair trial. *State ex rel. Vindicator Printing Co. v. Watkins*, 66 Ohio St.3d 129, 138 (1993). This is because, although generally not a concern in the

overwhelming majority of criminal cases, "[p]ervasive, unfair, and prejudicial media coverage of a criminal trial can sometimes deprive a criminal defendant of this constitutional right." *State ex rel. Toledo Blade Co. v. Henry County Court of Common Pleas*, 125 Ohio St.3d 149, 2010-Ohio-1533, ¶ 23, citing *Sheppard v. Maxwell*, 384 U.S. 333, 363, 86 S.Ct. 1507 (1966).

{¶ 12} The order on courtroom decorum and pretrial publicity at issue in this case is more commonly referred to as a "gag order." Gag orders, while admittedly a restriction on access to news outlets, are considered a less restrictive alternative to restrictions imposed directly on the media itself. *Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 564, 96 S.Ct. 2791 (1976). Nevertheless, in cases where there are concerns regarding the defendant's right to a fair trial, such as the case at bar, a gag order may issue only if specific findings are made demonstrating that (1) there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that the gag order would prevent, and (2) reasonable alternatives cannot adequately protect the defendant's fair trial rights. *State ex rel. National Broadcasting Co. v. Court of Common Pleas*, 52 Ohio St.3d 104, 108 (1990), citing *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 14, 106 S.Ct. 2735 (1986). Reasonable alternatives include, but are not limited to, extensive voir dire, a continuance of the criminal trial, a change of venue, detailed jury instructions, and/or sequestration of the jury. *State ex rel. Beacon Journal Publishing Co. v. Kainrad*, 46 Ohio St.2d 349 (1976), syllabus.

**Analysis**

{¶ 13} In this case, Judge Oda found there was "substantial probability" that a fair trial could be compromised and potential jurors might be prejudiced if the parties were not prohibited from further commenting on the case. Judge Oda also determined that "[s]uch statements are a clear and present danger to the right of the State of Ohio, the Defendant

- 6 -

and the public to a fair trial." However, besides the news articles referenced in Exhibit A, we find the record devoid of any evidence to indicate the gag order at issue was necessary in this case. In the absence of such evidence, to presume that there may be news coverage that threatens the administration of justice, whether that be against the state or the defendant, is nothing more than pure speculation. This is particularly true here when considering Judge Oda himself believed the news coverage thus far had been "remarkably fair" to all parties involved for it is well-established that "'pretrial publicity – even pervasive, adverse publicity – does not inevitably lead to an unfair trial.'" *State v. Coley*, 93 Ohio St.3d 253, 258 (2001), quoting *Nebraska Press Assn. v. Stuart*, 427 U.S. at 554.

{¶ 14} In so holding, we refer to the Enquirer's statements made at the hearing on its objections to Judge Oda's interim order, wherein it stated:

> We have the representative articles, but that's it. We don't have any evidence that, for some reason those articles or this case or whatever other context or circumstances, would lead to the impossibility of finding twelve impartial jurors to put in that box.

Continuing, the Enquirer then stated:

> And, so that's how it has to go and then you have to look at, all right, if in fact, this publicity is so pervasive and so prejudicial, and so unfair that it's going to result in the inability of twelve citizens from the Warren County jury pool to render a fair verdict, and that's really what you have to find, and again, I don't think there's been any such finding here.

{¶ 15} We agree with the Enquirer. It is evidence, not speculation, that must be made part of the record to demonstrate that a gag order is necessary to ensure the defendant will receive a fair trial. *State ex rel. Chillicothe Gazette, Inc. v. Ross Cty. Court of Common Pleas*, 2 Ohio St.3d 24, 25 (1982). "We cannot assume or speculate our way to these necessary findings; there must be some evidence in the record that speaks to the possible publicity and its effect on the jury pool." *State ex rel. Cincinnati Enquirer v. Sage*, 142 Ohio St.3d 392, 2015-Ohio-974, ¶ 25. Again, no such evidence was presented in this

case. Therefore, while we certainly understand Judge Oda's concerns, we agree with the Enquirer when it states Judge Oda's "sweeping conclusion" that a gag order is necessary in this case serves as nothing more than "an impermissible leap from his findings that the case has garnered media attention."

{¶ 16} Our holding is further supported by the fact that there is little evidence indicating Judge Oda fully considered any less restrictive alternatives than the gag order at issue, nor any evidence in the record to support Judge Oda's finding there was "no lesser restrictive alternative" available in this case. Instead, the record indicates Judge Oda considered only the fact that the gag order at issue did not exclude any media outlets from public areas within courthouse and/or from "coming to court, watching the proceedings, and talking about what they observed." Had the record contained sufficient evidence to prove other less restrictive alternatives had been fully considered, coupled with supporting evidence indicating no other less restrictive alternatives would suffice, the gag order at issue may very well have withstood judicial scrutiny. That simply did not occur here. Therefore, although we believe Judge Oda acted with his best intentions at heart, because gag orders should only be considered as a last resort, we find the gag order at issue in this case cannot stand and a writ of prohibition barring its enforcement is proper. Nothing about this decision, however, should be considered an invitation for either the state or the defendant to try this case in the court of public opinion as opposed to the court of law, nor does this court's decision bar Judge Oda from revisiting this issue in the future if justice so requires.

## Conclusion

{¶ 17} In light of the forgoing, after considering the arguments advanced by both parties herein, the Enquirer's request for a writ of prohibition to prevent Judge Oda from enforcing the order on courtroom decorum and pretrial publicity he issued on August 18, 2017 in the *Richardson* case is hereby granted.

{¶ **18**} Writ granted.

PIPER and M. POWELL, JJ., concur.