THE STATE, EX REL. THE BEACON JOURNAL
PUBLISHING COMPANY ET AL., *v.* KAINRAD, JUDGE.

[Cite as State, ex rel. Beacon Journal Pub. Co.,
v. Kainrad (1976), 46 Ohio St. 2d 349.]

(No. 76-75—Decided June 8, 1976.)

350

*Brouse & McDowell Co., L. P. A., Mr. Norman S. Carr,
Mr. John W. Solomon, Messrs. Vorys, Sater, Seymour &
Pease* and *Mr. Herbert R. Brown,* for relators.
*Mr. Robert A. Durst,* for respondent.

O'NEILL, C. J. The question before this court is: Shall
a permanent writ be granted?

If the writ is denied and the alternative writ now in
effect is thus terminated, the broad order of the trial court
not to publish will be in effect. It is a continuing order of
unlimited duration and would prohibit the relators and
other news media from ever publishing McDaniels' state-

ments regarding Garduno's "participation in any criminal activity" at any time.

At the time this case was submitted, it was undisputed that "McDaniels' mitigation hearing has not yet been conducted nor has McDaniels been sentenced." The January 26 order literally prevents relators from ever reporting in the future McDaniels' pronouncements made in court under oath.

Judge Kainrad testified that the order was still pending, that he did not anticipate issuing any other order, that he felt it was appropriate to issue the order at the time and that he still felt that it was an appropriate order, and that if the same circumstances came up again, he would issue the same order.

A majority of this court is of the opinion that this case is, therefore, not moot.

Judge Kainrad's order created a confrontation between the First Amendment right of freedom of the press, and Garduno's Sixth Amendment right to a fair trial by an impartial jury.

The relators do not contend that the First Amendment guarantees absolute unfettered freedom of the press in all cases and under all circumstances.

The relators assert that "where the right of a criminal defendant to a fair trial can be protected by the traditional methods of voir dire, continuance, change of venue, jury instructions, or sequestration of the jury, the press and public cannot be excluded from any aspect of criminal judicial proceedings."

The respondent's position is stated in his proposition of law No. 2:

"Where there is a clear and present probability that pretrial publicity will hinder and delay the speedy impaneling of an impartial jury, and possibly require a change of venue, a trial judge is under a duty to appraise the substantiality of the danger posed by the publicity, to balance the competing requirements of free press and fair trial, and to then make such order as required by the circum-

stances, in order to avoid last resort alternatives, such as a continuance or a change of venue."

The controlling issue in this cause is thus sharply drawn.

The majority of this court is of the opinion that where the constitutional right of a criminal defendant to a fair trial can be protected by the traditional methods of voir dire, continuance, change of venue, jury instructions or sequestration of the jury, the press and public cannot be excluded from a criminal trial or hearing and no order can be made which prohibits the publishing of news reports about statements made or testimony given during such proceedings.

An order not to publish cannot be considered unless the circumstances are imperative, and it appears clearly in the record that a defendant's right to a fair trial will be jeopardized and that there is no other recourse within the power of the court to protect that right or minimize the danger to it.

Before issuing any such order not to publish, it is obligatory upon the court to hold a hearing and make a finding that all other measures within the power of the court to insure a fair trial have been found unavailing and deficient.[1]

Although the specific question at issue in the instant cause was not decided in *Sheppard* v. *Maxwell* (1966), 384 U. S. 333, Justice Clark, writing for the court, set forth the principles of law which are applicable here. After describing the inflammatory publicity in the press about the *Sheppard* case and detailing the prejudicial influences al-

---

[1]It is the view of the writer of this opinion that the rule established in this case assures that there need not be a restraint or abridgment of freedom of the press in this state in a criminal case. The geography of Ohio, the judicial organization, the limited intensive coverage of the press and other media, the law and the alternative measures available within the power of the court are such that the defendant's Sixth Amendment rights to a fair trial can be protected by the court and the First Amendment right to freedom of the press can be guaranteed at the same time.

lowed within the court room during that trial and the atmosphere surrounding the trial by reason of the publicity, Justice Clark said, at page 358:

" * * * the judge never considered other means that are often utilized to reduce the appearance of prejudicial material and to protect the jury from outside influence."

Speaking for eight members of the court, he continued:

"We conclude that these procedures would have been sufficient to guarantee Sheppard a fair trial and so do not consider what sanctions might be available against a recalcitrant press * * *."

Justice Clark then set out in detail a number of specific actions which the court could have taken "to guarantee Sheppard a fair trial." (See pages 357 to 363, inclusive.)

The actions available and applicable in the instant cause are voir dire, continuance, change of venue, jury instructions and sequestration of the jury. Speaking directly to these available alternative measures, Justice Clark said, at pages 362 and 363:

" * * * *Of course, there is nothing that proscribes the press from reporting events that transpire in the courtroom.* But where there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates, or transfer it to another county not so permeated with publicity. In addition, sequestration of the jury was something the judge should have raised *sua sponte* with counsel." (Emphasis added.)

Another case decided by the United States Supreme Court, which supports the proposition that the media is free to report proceedings and events which transpire in the courtroom, is *Estes* v. *Texas* (1965), 381 U. S. 532, wherein Justice Clark, writing for the court, said at page 541:

"It is true that the public has the right to be informed as to what occurs in its courts, but reporters of all media * * * are always present if they wish to be and are plainly free to report whatever occurs in open court through their

respective media. This was settled in *Bridges* v. *California,* 314 U. S. 252 (1941), and *Pennekamp* v. *Florida,* 328 U. S. 331 (1946), which we reaffirm.''

That statement of the law is repeated in *Times-Picayune Publishing Corp.* v. *Schulingkamp* (1974), 419 U. S. 1301, at page 1307, by Justice Powell.

In *Wood* v. *Goodson* (1972), 253 Ark. 196, 485 S. W. 2d 213, the Supreme Court of Arkansas held:

''No court has the power to prohibit the news media from publishing that which transpires in open court * * *.''

A case directly on point with the instant cause is *New York Times Co.* v. *Starkey* (1976), 380 N. Y. S. 2d 239. The Supreme Court, Appellate Division, held, at pages 243-244:

'' * * * Precisely because 'a responsible press has always been regarded as the handmaiden of effective judicial administration, especially in the criminal field' (*Sheppard* v. *Maxwell,* 384 U. S. 333, 350, 86 S. Ct. 1507, 1515, 16 L. Ed. 2d 600), and because the press is the instrument by which the public is informed of current events, only the most exigent circumstances warrant the issuance of an order curtailing the right of the press to publish. *All other measures within the power of the court to insure a fair trial must be found to be unavailing or deficient.* No invasion of the freedom of the press should be sanctioned unless it appears clearly on the record that the court has inquired into the potential danger to the defendant if the prejudicial information is published, that on substantial grounds it appears that the defendant will be deprived of a fair trial as a result, and that the danger cannot be avoided or minimized by other means, such as by sequestering the jury, or through proper instructions to the jury (cf. *Times-Picayune Pub. Corp.* v. *Schulingkamp,* 419 U. S. 1301, 95 S. Ct. 1, 42 L. Ed. 2d 17). *In short, an order directing the press not to publish the information ought to be the last resort of the court.''* (Emphasis added.)

That statement of the law is directly contrary to the position taken by the respondent in the instant cause.

No persuasive reason has been advanced for permitting

the trial judges of this state, when faced in a criminal case with the dilemma of a confrontation between the First Amendment right of freedom of the press and the Sixth Amendment right of a defendant to a fair trial by an impartial jury, to restrain or limit the effect of either of these invaluable rights so long as there are alternative measures by which both rights can be guaranteed.

The only other issue which respondent raised for determination by this court is whether prohibition is a proper remedy in the instant cause.

Prohibition will lie on authority of *State, ex rel. Northern Ohio Telephone Co.,* v. *Winter* (1970), 23 Ohio St. 2d 6, 260 N. E. 2d 827.

Respondent is in error when he contends that there is a plain and adequate remedy at law by way of appeal. Just as this court reasoned in *Winter, supra,* relator is in the precarious position of having to either violate the temporary restraining order or acquiesce in the violation of the First Amendment to the Constitution of the United States. Other than the requested writ, there is no other remedy which can solve relators' irreconcilable conflict. There is no plain and adequate remedy in the ordinary course of the law. The order of Judge Kainrad was a usurpation of judicial power.

For the reasons stated in this opinion, the writ of prohibition is allowed.

*Writ allowed.*

HERBERT, KRENZLER and W. BROWN, JJ., concur.
CORRIGAN, CELEBREZZE and P. BROWN, JJ., dissent.

KRENZLER, J., of the Eighth Appellate District, sitting for STERN, J.

KRENZLER, J., concurring. I concur with the majority that the order of Judge Kainrad was a usurpation of judicial power and therefore invalid. I also concur in the judg-

ment granting the permanent writ of prohibition but am compelled to make additional comment.

The underlying issue in this case is whether a trial court may impose prior restrictions or restraints upon the news media in its reporting of criminal proceedings conducted in open court. It is noted that in this case we are not dealing with a court-imposed prior restraint or "gag order" against lawyers, court personnel, parties or witnesses to a case, but with a court-imposed prior restraint against the news media.

If a trial court has means at its disposal which will provide a fair trial for a criminal defendant, such trial court should not even consider imposing prior restraints upon the news media's reporting of criminal trial proceedings.

It is well recognized that trial courts have the responsibility of insuring fair trials to defendants in criminal cases. This responsibility can be met by using the means and methods available to courts as outlined in the majority opinion; i. e., by changes of venue, continuances, jury instructions, exhaustive voir dire examinations and sequestration of juries.

While the news media have a constitutional right to report open court pre-trial and trial proceedings, it is presumed that the news media will act in a reasonable and responsible manner using self-imposed restraint so as not to interfere with a criminal defendant's right to a fair trial.

If the courts and the media act reasonably, it would not be necessary for courts to decide whether the First or Sixth Amendment to the United States Constitution[2] has precedence or priority over the other.

The respondent argues that court-imposed prior restraints are valid as long as the trial is open to the news media and there is no restriction on reporting these events at a later time. This argument in effect is that limited, tem-

---

[2]The rights to free press and fair trial enunciated in the First and Sixth Amendments to the United States Constitution are also enumerated in the Ohio Constitution at Article I, Sections 10 and 11.

porary prior restraints imposed by a court are valid. At first blush this argument has appeal and appears to be a reasonable compromise. However, on closer examination, while the restraint may have the label of a limited or temporary prior restraint, such restraint is in fact a form of court-imposed censorship. To condone court-imposed prior restraints upon the news media in reporting criminal cases, even though they be temporary and limited, is to condone the beginning of unrestricted control of the news media.

While both the constitutional rights of freedom of the press and to a fair trial are important, in the event of a conflict, the First Amendment right to a free press must take precedence. In the balancing of values it is the right of a free press that is paramount. If a "gag order" is imposed on the news media, court-imposed censorship occurs. Clearly there is a violation of the First Amendment safeguard for freedom of the press. There is no means to remedy this restriction against a free press. On the other hand, if a court does not impose a "gag order" on the news media, a violation of a defendant's right to a fair trial may or may not result. Whether or not a violation occurs will be determined by the manner of news reporting by the media, which should have complete freedom in reporting open court proceedings in a criminal trial. However, this complete freedom in reporting must be conducted with the understanding that if carried to excess it may jeopardize a defendant's right to a fair trial.

If reporting is carried to such excess that it prejudices the defendant's right to a fair trial, a violation of his constitutional rights occurs and the result would be a new trial. There the defendant would retrieve those rights lost by the unfair and prejudicial reporting. While such a new trial may inconvenience a defendant he is not ultimately prejudiced. Although in a small number of cases a new trial will inevitably be necessary, this is a small price to pay for a free and unfettered press. In other words, there is no alternative or relief when a violation of the First Amendment right to a free press occurs, but there is an

alternative and relief when a violation of a defendant's right to a fair trial is occasioned.

As to the issue of mootness, I strongly subscribe to the theory that whenever there are matters of great public concern that may recur, they are not moot as to the general public although they may be technically moot as to the immediate parties in the case. Under such circumstances, the court has discretion whether to invoke the mootness doctrine. *Wallace v. University Hospitals of Cleveland* (1961), 171 Ohio St. 487, 172 N. E. 2d 459.

This point is best illustrated by reference to *In re Popp* (1972), 33 Ohio App. 2d 22, 292 N. E. 2d 330 (reversed in *In re Popp* [1973], 35 Ohio St. 2d 142, 298 N. E. 2d 529). This was an action in habeas corpus and involved the issue of whether every person subject to civil commitment proceedings under R. C. 5122.11 to 5122.15 should be afforded the benefit of counsel. On the date of the hearing on the merits in the Court of Appeals, the relator was discharged from custody and the respondents moved for dismissal on the basis of mootness. The Eighth District Court of Appeals overruled the motion to dismiss and held that whenever there are matters of great public concern that may recur, the court has discretion whether to consider the issue as moot.

The Court of Appeals then held that due process guaranteed by the Fourteenth Amendment to the United States Constitution requires that an alleged mentally ill person be represented by counsel, either retained or appointed, in a hearing which may result in temporary or indefinite involuntary commitment under R. C. 5122.15.

This court ackowledged the theory of mootness in *In re Popp, supra* (35 Ohio St. 2d 142), at page 144, but refused to apply it and reversed the Court of Appeals in a 5 to 2 decision.

However, approximately one year later in the case of *In re Fisher* (1974), 39 Ohio St. 2d 71, 313 N. E. 2d 851, this court was again faced with the identical question presented in *In re Popp, supra,* and held that habeas corpus

will lie to determine whether a person was not afforded counsel and thereby denied due process in non-criminal involuntary civil commitment proceedings undertaken pursuant to R. C. 5122.15. It also held that in an involuntary civil commitment proceeding under R. C. 5122.15, the due process clause of the Fourteenth Amendment to the United States Constitution requires that individuals subject to such proceedings are entitled to be represented by counsel, either retained or appointed.

Therefore, because of the foregoing and because the issue of the confrontation between the First and Sixth Amendments to the United States Constitution are of great public importance and may recur, and because the broad order made by the trial court is still technically in effect, I do not consider the issues raised in this case as moot and would not apply the mootness doctrine.

CORRIGAN, J., dissenting. I would deny the writ for the reason that the question involved is now moot. The separate trials of McDaniels and Garduno have been concluded and each defendant has been convicted. So, the majority is intent on making a collateral determination of an abstract question which no longer rests upon existing facts.

As this court held, back in 1910, in the case of *Miner v. Witt*, 82 Ohio St. 237, that if there is nothing left but a moot case, it is not the duty of the court to answer moot questions. This is still the law of Ohio. See, also, *Marsh v. Goldthorpe* (1930), 123 Ohio St. 103; *State, ex rel. Maysville Bridge Co., v. Quinlan* (1931), 124 Ohio St. 658; *State, ex rel. Hawke, v. Weygandt* (1947), 148 Ohio St. 453; *State, ex rel. Moss, v. Clair* (1947), 148 Ohio St. 642; *E. W. Scripps Co. v. Fulton* (1955), 164 Ohio St. 261; *State, ex rel. Stefanick, v. Municipal Court* (1970), 21 Ohio St. 2d 102.

These Ohio cases merely adhere to the rule followed by the Supreme Court of the United States in cases that are moot, as expressed in *Mills v. Green* (1895), 159 U. S. 651, 653, that "[t]he duty of this court, as of every

other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect and not to give opinions on moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." See, also, *Kimball* v. *Kimball.* (1899), 174 U. S. 158, 161, and *California* v. *San Pablo & Tulare Railroad Co.* (1893), 149 U. S. 308, 314.

Obviously, the majority fashions its own rules for certain cases.

CELEBREZZE and P. BROWN, JJ., concur in the foregoing dissenting opinion.

