THE STATE, EX REL. BLUE CROSS AND BLUE SHIELD MUTUAL OF NORTHERN OHIO, *v.* CARROLL, JUDGE, ET AL.

*Richard R. Hollington, Jr., Kenneth L. Klothen* and *Donald A. Burns,* for relator.

*John T. Corrigan,* prosecuting attorney, and *Thomas P. Gill,* for respondents.

*William Tousley Smith* and *Daniel L. Ekelman,* for amicus curiae Brentwood Hospital.

*E. John Brzythwa, Ralph Cascarilla* and *Fred M. DeGrandis,* for amicus curiae Lakewood Hospital.

MARKUS, P.J. Relator's complaint in this court seeks prohibition or mandamus to prevent the respondent judge from enforcing a preliminary injunction in pending common pleas court case Nos. 83968 and 83993. In those cases, the city of Lakewood, d.b.a. Lakewood Hospital, and Brentwood Hospital ask for equitable relief from allegedly unfair and deceptive trade practices. More specifically, the two hospitals complain there about public advertising by Blue Cross and Blue Shield regarding its new

cost containment plan for hospital insurance.

Relator (Blue Cross and Blue Shield) has moved for summary judgment in its favor on its complaint in this court. The respondent judge has moved to dismiss that complaint or for summary judgment denying any relief. The parties, and the two hospitals which appear as *amici curiae,* have submitted extensive evidentiary materials supporting their respective positions. Those materials include the original record and a transcript of the oral proceedings in the underlying common pleas cases, as well as affidavits from counsel and others.

These materials establish the following undisputed facts:

(1) In its common pleas court case, Lakewood Hospital seeks an order that Blue Cross and Blue Shield and those participating with it "be enjoined from further advertising of any nature or the publication of any statements by any means which are designed to promote [its] selection of member hospitals for 1985 until such time as the Superintendent of Insurance expressly approves [its] selection of member hospitals and all appeals are exhausted concerning such approval, should such approval occur."

(2) In its common pleas court case, Brentwood Hospital seeks an order to enjoin Blue Cross and Blue Shield and those participating with it "from making any representation or claim which expressly or by implication, inference or innuendo" asserts certain facts and conclusions that Brentwood claims are false and harmful.

(3) On the day these two actions were filed, they were assigned to the same judge who telephoned the office of the anticipated counsel for Blue Cross and Blue Shield. The judge requested counsel from that office to attend proceedings forthwith. On that day and the following day, the judge heard oral arguments from counsel for the parties regarding the hospitals' requests for a temporary restraining order. On the day following the filing of those cases, the judge advised counsel that he would treat the proceedings as a hearing on motions for preliminary injunctions.

(4) No witnesses testified at the hearings in the trial court. No exhibits were formally authenticated, offered or received. The parties made no relevant factual stipulations. The hospitals relied upon their verified complaints, together with purported copies of miscellaneous documents and an attorney's affidavit attached to their pleadings and memoranda.

(5) Two days after the cases were filed, the judge issued a preliminary injunction "until judicial resolution of the [hospitals'] appeals to the Superintendent of Insurance of the state of Ohio of contract termination notices, or until the trial of the merits of the issues and claims arising from these causes, or until further order of this court."

(6) The judge's preliminary injunction restrained Blue Cross and Blue Shield and those participating with it from:

"1. The repetition or further publication of advertisements of the same kind, nature and content as those described in [the hospitals'] exhibits; and

"2. Further advertising of any nature or the publication of any statements by any means directly or indirectly, affirmatively or by omission, that:

"(a) [Blue Cross and Blue Shield] has certified, selected or designated any specific hospital or hospitals, or any specific number of hospitals as 'winners' or 'losers', members or non-members, or included or excluded members of its 1985 Member Hospital Network Plan.

"(b) any specific hospital or list of

hospitals offers the best quality of care or the lowest price or cost, or, singularly or together with any other hospital or hospitals, offers better care or lower prices or costs than any other hospital; or

"(c) either Lakewood Hospital or Brentwood Hospital offers lower quality care, or care at a higher price or cost than any other hospital or hospitals.

"Nothing in this order shall be construed to prohibit the otherwise lawful advertisement or cost-containment measures undertaken by [Blue Cross and Blue Shield] or of its general information relative to its network plan of providing health care, or direct communication with its subscribers concerning its cost-containment program generally and/or its efforts or intent to provide quality coverage with respect to medical and related services and treatment at a reasonable cost to the subscriber; nor is [Blue Cross and Blue Shield] limited or restrained from the promotion or encouragement of public self-education as to the thrust and contemplated effect of the efforts of [Blue Cross and Blue Shield] to accomplish cost containment respecting quality medical and surgical care and services. Nothing in this provision is to be considered as in any manner limiting or diminishing the efficacy of the equitable and statutorily-authorized restraints hereinabove imposed on [Blue Cross and Blue Shield.]"

(7) The present controversy in the common pleas court and in this court relates solely to the ability of Blue Cross and Blue Shield to make future comments about its Hospital Network Plan. We are not here determining whether any previous statement or advertisement by Blue Cross and Blue Shield was fair or accurate. Nor are we determining whether the Hospital Network Plan is fair, appropriate, or lawful. All parties to this action apparently agree that no part of the Blue Cross and Blue Shield Hospital Network Plan will affect the payment to any subscriber, policyholder, or hospital unless or until the plan survives presently pending challenges. Presumably those issues will be resolved by the Insurance Department or a court reviewing that agency's decision.

From these and other undisputed facts, we conclude as a matter of law:

A. The common pleas court and the assigned judge had no jurisdiction to issue the above-described preliminary injunction.

B. The court failed to give sufficient notice of its intention to consider a motion for a preliminary injunction. See Civ. R. 6(D) and 65(B).

C. The court issued a preliminary injunction without conducting an evidentiary hearing and without receiving any legally competent evidence to support its issuance.

D. The court premised its authority to issue an equitable order on the provisions in R.C. Chapter 4165, and more particularly R.C. 4165.03 (the Deceptive Trade Practices Act). That Act is not intended to replace established administrative supervision over advertising by regulated industries. The Ohio Department of Insurance and the Superintendent of Insurance have primary and initial regulatory jurisdiction over an insurer's allegedly misleading or deceptive advertising. Cf. *Ohio Academy of Trial Lawyers* v. *Dept. of Ins.* (1983), 4 Ohio St. 3d 201.

E. The Department of Insurance and its Superintendent have express authority to order that an insurer cease any pending or prospective statement of advertising which misrepresents "the terms of any policy issued or to be issued or the benefits or advantages promised thereby." R.C. 3901.21(A). Such conduct also constitutes a crime punishable by fine or imprisonment. R.C. 3999.08, 3999.99(D). Additionally, the

Superintendent can ban any advertising or statement "with respect to the business of insurance or with respect to any person in the conduct of his insurance business, which is untrue, deceptive, or misleading." R.C. 3901.21(B). The Superintendent has further specific authority to restrain misleading or deceptive advertising "in connection with the solicitation of sickness and accident insurance." R.C. 3923.16. Violations of any administrative orders restraining such misleading, deceptive, or unfair advertising is a basis for suspension or revocation of the insurer's license to do business. R.C. 3901.22, 3923.16, 3999.08.

F. The advertising involved here is largely, if not entirely, a form of political rather than commercial speech. It seeks public approval and support for the insurer's position on a publicly controversial subject, and only secondarily promotes the sale of the insurer's policies. Numerous public and private sources have debated the merits of this insurer's plan, and some have publicly proposed governmental intervention. The subject has received extensive attention in all forms of public information media.

G. To the extent that the challenged preliminary injunction controls commercial speech involved in soliciting insurance business, it exceeds the court's jurisdiction. The Department of Insurance should address such matters initially. The Common Pleas Court of Franklin County has exclusive jurisdiction to review the insurance department's decisions in such matters. R.C. 119.12. If an allegedly aggrieved party could circumvent those procedures by invoking R.C. Chapter 4165, the goals of presumed administrative expertise and uniformity would be forfeit. The legislature has expressed its preference for the forum to consider such issues, and the courts should heed that direction.

H. To the extent that the chal-lenged preliminary injunction controls non-commercial communications, it exceeds the court's constitutional authority by exercising unjustified prior restraint on free speech. The hospitals may have an action for damages for defamation or interference with their business activities. It is doubtful that the Constitution would permit prior restriction on any political commentary in this area. Additionally, the challenged order is unnecessarily broad to control the perceived harmful conduct. Further, its terms are ambiguous, so its chilling effect on free speech is particularly burdensome.

I. This court should prohibit the enforcement of orders which unreasonably restrain free speech, when there is no adequate alternative remedy at law. Cf. *State, ex rel. Dayton Newspapers,* v. *Phillips* (1976), 46 Ohio St. 2d 457 [75 O.O.2d 511]; *State, ex rel. Beacon Journal Pub. Co.,* v. *Kainrad* (1976), 46 Ohio St. 2d 349 [75 O.O.2d 435]; *State, ex rel. Dispatch Printing Co.,* v. *Golden* (1982), 2 Ohio App. 3d 370.

J. This court should prohibit the enforcement of an order which exceeds the jurisdiction of the tribunal making that order, when there is no adequate alternative remedy at law. *State, ex rel. Adams,* v. *Gusweiler* (1972), 30 Ohio St. 2d 326 [59 O.O.2d 387].

K. Relator has no adequate alternative remedy at law. The challenged order has an indeterminate duration which does not necessarily depend on the issuing court's own actions. By its terms, the order continues during proceedings in an administrative agency and subsequent review by courts in another county. It is a non-final, non-appealable order, so this court has no jurisdiction to review it by an appeal.

L. The challenged order prevents a critical participant in a contested controversy from expressing itself publicly, while all other interested parties are do-

ing so freely. The relator faces critical time constraints to express its views, since its proposal concerns a substantial, imminent change in its policy terms. Without an opportunity to explain those proposed terms publicly, its ability to accomplish a smooth transition will be severely hampered.

M. This court expresses no opinion about the merits or legality of the relator's proposed plan. Further, this court expresses no opinion about the accuracy or propriety of the statements which relator made in its previous advertising on this subject. None of those matters is properly before us at this time.

Pursuant to Civ. R. 56, we find that there is no genuine issue of material fact and that relator is entitled to judgment as a matter of law. Therefore, relator's motion for summary judgment is granted. Respondent's motions to dismiss and for summary judgment are denied. Respondent is directed not to enforce the previously described preliminary injunction.

*Judgment accordingly*

PARRINO and NAHRA, JJ., concur.

NAHRA, J., concurring. I concur in the foregoing journal entry and opinion and would re-emphasize these points.

Among other things, the trial court's order prohibited Blue Cross and Blue Shield from advertising what it *proposed* to do *if* it obtained regulatory approval. We hold such an order to be illegal. We are not passing on the merits of the Blue Cross-Blue Shield proposal or the method used to create it. Nor are we passing on the rights of any of the parties arising out of the creation or promotion of the Blue Cross-Blue Shield proposal or its possible implementation. We are holding that a sweeping limitation on the discussion of these issues cannot pass constitutional muster.