[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Cincinnati Enquirer v. Baker Ross*, Slip Opinion No. 2026-Ohio-510.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-510

THE STATE EX REL. CINCINNATI ENQUIRER, A DIVISION OF GANNETT GP MEDIA, INC., ET AL. *v.* BAKER ROSS, JUDGE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Cincinnati Enquirer v. Baker Ross*, Slip Opinion No. 2026-Ohio-510.]**

*Prohibition—Prior restraint on media publication—To impose prior restraint, respondent trial-court judge must hold a hearing, receive evidence, and permit those affected to be heard—Respondent may not prevent reporting of proceedings in open court—Peremptory writ granted.*

(No. 2026-0118—Submitted February 11, 2026—Decided February 17, 2026.)

IN PROHIBITION

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ.

**Per Curiam.**

{¶ 1} Relators, the Cincinnati Enquirer, a division of Gannett GP Media, Inc.; Copley Ohio Newspaper, Inc. (d.b.a. the Akron Beacon Journal); and Gatehouse Media Ohio Holdings II, Inc. (d.b.a. the Columbus Dispatch) (together, "the newspapers"), filed a complaint for a writ of prohibition against respondent, Judge Susan Baker Ross of the Summit County Court of Common Pleas. The newspapers seek to prevent Judge Baker Ross from enforcing an order issued in an ongoing criminal trial purporting to limit what the newspapers may record and publish regarding the proceedings.

{¶ 2} At or around the time that the newspapers filed their amended complaint challenging the order, Judge Baker Ross issued an amended order that resolves portions of the parties' dispute. Judge Baker Ross filed a motion to dismiss under Civ.R. 12(B)(6), attaching the amended order and arguing primarily that the issuance of the amended order moots the newspapers' claims. However, because the amended order does not render the newspapers' claims moot, we deny Judge Baker Ross's motion to dismiss and instead issue a peremptory writ of prohibition preventing Judge Baker Ross from enforcing certain provisions of the amended order.

{¶ 3} Specifically, we issue a peremptory writ preventing Judge Baker Ross from enforcing (1) the provision of the amended order prohibiting publication of jurors' or prospective jurors' personal information (a) until she holds a hearing and makes the necessary findings from evidence in the record and (b) to the extent that it prohibits dissemination of information revealed in open court or from publicly available court records, and (2) the provision of the amended order pertaining to objecting witnesses to the extent that it (a) prohibits representatives of the media from attending and being heard at a witness's objection hearing, (b) prohibits recording of objection hearings that occur in open court, and (c) prohibits recording of defendants when they are not on the stand.

## I.  FACTS AND PROCEDURAL HISTORY
### A.  The Original Order

{¶ 4} Judge Baker Ross is presiding over the highly publicized criminal trial of Charles Jones and Mike Dowling.  Jones and Dowling, both former officials of FirstEnergy Corp., are accused of participating in the bribery of certain Ohio public officials, which allegedly resulted in FirstEnergy's receipt of "favorable regulatory treatment" and "significant financial benefits."  According to the newspapers, the trial is of "enormous public interest," in part because the defendants have included on their witness lists Ohio's governor and former lieutenant governor.  The newspapers allege that the trial commenced on Tuesday, January 27.

{¶ 5} The day before trial began, Judge Baker Ross issued, in each defendant's case, an identical "Media Participation and General Decorum Order" (the "original order").  The original order states that it is intended "to provide for orderly proceedings" and contains provisions relating to, among other things, court security, parking, courtroom demeanor, attire, remote viewing, and media participation.  It also provides that violations of the order may result in sanctions, including "temporary or permanent exclusion" of the offender or the media organization the offender represents, contempt, and "[s]uch other sanctions as deemed necessary . . . to ensure the due and proper administration of justice."

### B.  The Newspapers' Original and Amended Complaints

{¶ 6} The newspapers filed their original complaint on Wednesday, January 28, and an amended complaint on Friday, January 30.  As narrowed by the newspapers' opposition to the motion to dismiss, the amended complaint challenges two provisions of the original order.[1]

---

1. The newspaper initially challenged a third provision of the original order, which purported to limit the newspapers' "property or proprietary interest" in the photos, videos, and audio recordings made of the trial; it further required that those recordings be "[made] available" upon the request of the court or of either party (the "proprietary provision").  Because no comparable provision appears in Judge Baker Ross's amended order, and because in their response to the motion to dismiss the

{¶ 7} First, the original order purported to prevent the newspapers from publishing "anything that could be used to personally identify any juror or prospective juror" (the "jury provision"). The original order states that the jury provision is intended to "preserve the jury system" and prevent jurors or their families from being "harassed or jeopardized." The jury provision explicitly "does not prohibit members of the media from publishing the number of males or females, or other demographic data, which will not personally identify a particular juror or prospective juror."

{¶ 8} Second, the original order provided that each witness has the right to object to being recorded or photographed and further states that any witness so objecting "shall not be recorded" by any means (the "witness provision"). The newspapers challenged the witness provision for the first time in their amended complaint.

{¶ 9} The newspapers' amended complaint seeks an "immediate[]" peremptory writ of prohibition, or, in the alternative, an alternative writ of prohibition, preventing Judge Baker Ross from enforcing the jury provision and the witness provision of the original order. The amended complaint asserts that the jury provision is, "on its face, a prior restraint of speech" that is not narrowly tailored, that it fails to balance the privacy interest of the jurors with the right of access to criminal trials, and that it is "impermissibly vague." With respect to the witness provision, the newspapers argue that it cannot stand, because it violates Sup.R. 12(B)(2), which addresses the recording of court proceedings, by "automatically grant[ing] a witness'[s] objection to being recorded . . . without a finding based upon evidence" and without allowing the media to be heard.

newspapers appear to have abandoned this claim, this opinion does not analyze the proprietary provision.

{¶ 10} On Monday, February 2, the court issued an entry ordering Judge Baker Ross to respond to the amended complaint by Tuesday, February 3. 2026-Ohio-301.

### C. The Amended Order and Judge Baker Ross's Motion to Dismiss

{¶ 11} Judge Baker Ross filed a motion to dismiss the amended complaint on February 3. In her motion, Judge Baker Ross primarily argues that the newspapers' claims are moot because, on the same day the newspapers filed their amended complaint, Judge Baker Ross issued an amended order that supersedes the challenged order (the "amended order"). She further argues that the newspapers' claims do not fall under the "capable of repetition, yet evading review" exception to the mootness doctrine because the issues raised in the amended complaint "were cured by the [amended] order," which she attaches to her motion.

{¶ 12} Finally, she says that the newspapers possess adequate remedies in the ordinary course of the law to challenge the amended order, in the form of a mandamus action to compel access to records, appeal from any contempt or sanction order imposed for violation of the order, and, under the amended order, postdischarge access to prospective juror names and posttrial access to juror names once disclosed.

{¶ 13} The newspapers timely opposed the motion to dismiss. They contend that their challenges to the jury provision and witness provision are not moot under two exceptions to the mootness doctrine: (1) the case presents "'a debatable constitutional question or a matter of great public or general interest,'" quoting *Tschantz v. Ferguson*, 57 Ohio St.3d 131, 133 (1991), and (2) their claims are "'capable of repetition, yet evading review,'" quoting *State ex rel. Dispatch Printing Co. v. Geer*, 2007-Ohio-4643, ¶ 10.

{¶ 14} They argue that the amended order remains constitutionally defective. According to the newspapers, the jury provision of the amended order (the "amended jury provision"), while somewhat narrowed, still amounts to a

"blanket restriction" on publication of jurors' and prospective jurors' personally identifiable information, even when such information is disclosed in open court or can be gleaned from the public record.[2] Thus, they say, the amended jury provision remains a prior restraint on speech that was ordered without a hearing or factual findings based on sufficient evidence in the record. As to the amended order's witness provision (the "amended witness provision"), the newspapers argue that it still fails to comply with Sup.R. 12(B)(2), in that it purports to "prohibit[] the media from being present during a hearing on a witness'[s] objection to media coverage," thereby preventing the media from asserting their rights.[3] Moreover, the newspapers construe the amended witness provision as preventing them from recording the defendants even when they are not actually testifying on the basis that they might testify—a restriction the newspapers contend is impermissible.

## II. ANALYSIS

{¶ 15} Under S.Ct.Prac.R. 12.04(C), we must determine whether to "dismiss the case; issue an alternative or a peremptory writ . . .; or deny the request for the writ." Dismissal is required if it appears beyond doubt, after construing all material facts in the complaint in the newspapers' favor, that they are not entitled to the requested relief. *State ex rel. Morenz v. Kerr*, 2004-Ohio-6208, ¶ 13. If, however, it appears that the claims may have merit, an alternative writ should be

---

2. The newspapers do not argue that they are entitled to receive any specific information regarding jurors or that personally identifying information about jurors or prospective jurors must be *disclosed* by the court. And, indeed, we have recognized that certain personal information regarding prospective jurors is properly withheld. *See State ex rel. Beacon Journal Publishing Co. v. Bond*, 2002-Ohio-7117, ¶ 25 (prospective juror's "Social Security number, telephone number, and driver's license number . . . should be redacted from [juror] questionnaires prior to disclosure" because "such information does nothing to further the objectives underlying the presumption of openness"). Nor do the newspapers suggest that the court would be prohibited from conducting an in camera review of, for example, a juror's or prospective juror's objection to answering a particular question in open court. *See id.* at ¶ 23 (discussing conduct of in camera hearings when voir dire touches on a prospective juror's particularly personal or sensitive information).

3. The newspapers do not contend that they must be permitted to record a hearing that is properly conducted in camera or otherwise closed or partially closed to the public.

granted. *Id.* Finally, if the facts are uncontroverted and it appears beyond doubt that the newspapers are entitled to the requested relief, a peremptory writ should issue. *Id.*

{¶ 16} To be entitled to a writ of prohibition, the newspapers must establish that (1) Judge Baker Ross has exercised, or is about to exercise, judicial power, (2) the exercise of that power is unauthorized by law, and (3) the newspapers lack an adequate remedy in the ordinary course of the law. *State ex rel. Ames v. Ondrey*, 2023-Ohio-4188, ¶ 6.

## A. The Action Is Not Moot

{¶ 17} Judge Baker Ross primarily argues that the newspapers' prohibition claim has been rendered moot by her issuance of the amended order, which she argues "supersedes the complained-of provisions" and therefore "eliminates the live controversy."[4]

{¶ 18} In general, a case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. *State ex rel. Ames v. Summit Cty. Court of Common Pleas*, 2020-Ohio-354, ¶ 8. Put another way, if "an event occurs without the fault of either party, which renders it impossible for the court to grant any relief," the court will decline to decide the case in an "exercise[ of] judicial restraint." *See Tschantz*, 57 Ohio St.3d at 133; *see also Maurent v. Spatny*, 2025-Ohio-5002, ¶ 9, quoting *Travis v. Pub. Util. Comm.*, 123 Ohio St. 355, 359 (1931) ("We have long understood that the [Ohio Constitution's] grant of judicial power requires that we decide only 'actual controversies where the judgment can be carried into effect . . . .'").

---

4. Although a court generally may not rely on material outside the complaint when considering a motion to dismiss under Civ.R. 12(B)(6), *see State ex rel. West v. McDonnell*, 2014-Ohio-1562, ¶ 14, "[a]n event that causes a case to become moot may be proved by extrinsic evidence outside the record," *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Info. Network, Inc. v. Dupuis*, 2002-Ohio-7041, ¶ 8. Thus, the court may properly consider the amended order attached to Judge Baker Ross's motion to dismiss in determining whether this case is moot. *See State ex rel. Ames v. Summit Cty. Court of Common Pleas*, 2020-Ohio-354, ¶ 6 (citing cases).

**{¶ 19}** The newspapers argue that the case is not moot, because the issues raised are "capable of repetition, yet evading review." *State ex rel. Calvary v. Upper Arlington*, 2000-Ohio-142, ¶ 9. "This exception applies only in exceptional circumstances in which the following two factors are both present: (1) the challenged action is too short in its duration to be fully litigated before its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Id.*, citing *Spencer v. Kemna*, 523 U.S. 1, 17 (1998).

**{¶ 20}** As we have explained, "Courtroom closure cases often evade review, since a closure order usually expires before an appellate court can consider it." *State ex rel. Beacon Journal Publishing Co. v. Donaldson*, 63 Ohio St.3d 173, 175 (1992). In *Donaldson*, we held that a challenge to a trial court's order closing voir dire to the public was not moot even though (1) the trial had ended and the closure order had therefore terminated and (2) the trial court had subsequently adopted a new local rule that required the court to undertake additional procedures before issuing a closure order. *Id.* at 174-175. We concluded that neither the end of the underlying trial—and, by extension, cessation of the order—nor the adoption of the local rule made the issues raised incapable of repetition. *Id.* at 175-176.

**{¶ 21}** Likewise, in *Geer*, we rejected the respondent-judge's argument that the relator-newspaper's claim for a writ of prohibition challenging a restriction on photographing a juvenile witness's face was moot because the hearing to which it was directed had ended. 2007-Ohio-4643 at ¶ 9. We noted that "[l]ike more typical orders," the order barring photography "was too brief in its duration to be fully litigated before the plea hearing concluded." *Id.* at ¶ 11. Moreover, we found a "reasonable expectation" that the relator would be subjected to "comparable orders in the future" because the respondent had stated his "continued belief that . . . 'his order was specifically authorized.'" *Id.* at ¶ 12, quoting the respondent's brief.

{¶ 22} As in those cases, both "capable of repetition, yet evading review" factors are present here. First, the original order was in effect for too short a time to be fully litigated; indeed, Judge Baker Ross superseded the order with the amended order only four days after issuing the original order. And as explained further below, the amended order fails to cure all the issues raised by the newspapers in their amended complaint. Thus, newspapers have a "reasonable expectation" that they will be subjected to "comparable orders in the future," see *Geer* at ¶ 12; rather, it appears by all accounts that the newspapers *are currently* subject to a comparable order. Finally, as the newspapers point out, if Judge Baker Ross's issuance of the amended order is held to moot their amended complaint, then nothing prevents her reissuing the order, thereby frustrating the newspapers' attempts to vindicate their constitutional rights. The "exceptional circumstances" of this case thus qualify as capable of repetition, yet evading review. *See Calvary*, 2000-Ohio-142, at ¶ 9.

{¶ 23} The authorities that Judge Baker Ross cites in favor of mootness are distinguishable. *M.R. v. Niesen*, 2022-Ohio-1130, for example, concerned a challenge to a temporary restraining order that the appellants contended was a prior restraint on speech. *Id.* at ¶ 6. This court dismissed the appeal as moot because not only had the restraining order expired, but it also plainly could not be extended under Civ.R. 65(A). *Id.* at ¶ 9. Further, the object of the temporary restraining order was to prevent dissemination of one party's identifying information because he sought to proceed anonymously. *Id.* at ¶ 3-4. But in a separate proceeding, this court had already determined that that party was required to proceed under his proper name. *Id.* at ¶ 12. Thus, there was "no real possibility" that a similar controversy regarding dissemination of his identifying information would reoccur. *Id.*

{¶ 24} *State ex rel. Hardesty v. Williamson*, 9 Ohio St.3d 174 (1984), does not support Judge Baker Ross's position, either. There, the Wood County juvenile

court transferred a child-custody matter—to which the relator was a party—to the Wood County Domestic Relations Court. *Id.* at 175. The relator sought a writ of prohibition from the Wood County Court of Appeals preventing the Wood County Domestic Relations Court from taking any action in the child-custody matter, contending that the matter could have been heard only by the Franklin County Domestic Relations Court, where relator had previously obtained a divorce decree. *Id.* Around the same time, the relator also filed a direct appeal with the Wood County Court of Appeals, making the same argument. *Id.* The court of appeals agreed with relator and remanded the matter to the Wood County Juvenile Court for further proceedings. *Id.* at 175-176. Because, by virtue of the court of appeals' judgment, the Wood County Domestic Relations Court could no longer exercise jurisdiction over the case—i.e., the object of the writ was already accomplished—this court affirmed denial of the writ on mootness grounds. *See id.* at 176.

{¶ 25} In both *M.R.* and *Hardesty*, circumstances above and beyond the mere termination of the challenged order rendered the issues unlikely to recur. Moreover, in those cases, the respondent-judge was not responsible for the termination of the challenged order. This case is different. Judge Baker Ross herself caused the termination of the original order, and nothing prevents her from issuing or enforcing subsequent comparable orders. To the contrary, she has already issued a comparable order in the form of the amended order, and the likelihood that she will enforce that order is reasonably high, given that the trial appears to still be in its early stages. We therefore reject Judge Baker Ross's mootness argument and proceed to the merits of the newspapers' challenge.

### B. Unauthorized by Law[5]

#### 1. The amended jury provision

{¶ 26} The amended jury provision reads:

---

5. For purposes of determining whether a peremptory writ is warranted, this opinion analyzes the relevant provisions of the amended order, rather than of the original order. The fact that the amended

Based upon the findings of facts contained herein and in addition to the prohibitions on photographing or recording jurors including alternates, the media is prohibited from publishing or otherwise distributing or making available personally identifiable information (PII) defined herein of any juror or prospective juror, until such time as said jurors have been fully excused from service in this case. This is necessary to preserve the jury system and assure individual jurors that they and their families will not be harassed or jeopardized during the proceedings. . . .

This prohibition does not prohibit members of the media from publishing the number of males or females, or other demographic data, which will not personally identify a particular juror or prospective juror.

{¶ 27} Elsewhere, the amended order defines "PII" to include "full name, nickname, or partial name, home address, phone number, email, social media handles, date of birth, employer, . . , images or video showing juror's face, license plate, or any combination of descriptors likely to identify a specific juror."

{¶ 28} The newspapers assert that the amended jury provision does not pass constitutional muster for two reasons: first, because it is a prior restraint on speech that was issued without a hearing or evidentiary support, and second, because it

---

order is currently operative is not disputed by the parties. *See Morenz*, 2004-Ohio-6208, at ¶ 13 (peremptory writ of prohibition will issue "if the pertinent facts are uncontroverted and it appears beyond doubt that [relator] is entitled to the requested writ[]"), citing *State ex rel. Highlander v. Rudduck*, 2004-Ohio-4952, ¶ 8. Moreover, analysis of the amended order preserves judicial resources and limits our decision to the issues in which the parties retain a cognizable legal interest. *See Ames*, 2020-Ohio-354, at ¶ 8.

purports to prevent the newspapers from publishing PII even if that information is obtained "from the public record or . . . outside the courtroom." We agree.

{¶ 29} A judicial order that forbids publication before that publication takes place constitutes a prior restraint on speech. *State ex rel. Toledo Blade Co. v. Henry Cty. Court of Common Pleas*, 2010-Ohio-1533, ¶ 20. Prior restraints have been described as "the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 559 (1976). As such, prior restraints face a "heavy presumption against their constitutional validity," even if they are not unconstitutional per se, because they facially offend the fundamental rights of freedom of speech and freedom of the press enshrined in the First Amendment to the United States Constitution and in Article I, Section 11 of the Ohio Constitution. *Henry Cty.* at ¶ 21. In the context of court proceedings, a prior restraint further implicates the right of access to court proceedings embodied in the Ohio Constitution's open-courts provision, Ohio Const., art. I, § 16. *Henry Cty.* at ¶ 22. That provision, even apart from the others, provides a presumption of public access to court proceedings. *See State ex rel. Cincinnati Enquirer v. Bloom*, 2024-Ohio-5029, ¶ 37. In short, it is well established that "'the public has the right to be informed as to what occurs in its courts,'" and "'reporters of all media . . . are plainly free to report whatever occurs in open court.'" (Ellipsis added in *Kainrad*.) *State ex rel. Beacon Journal Publishing Co. v. Kainrad*, 46 Ohio St.2d 349, 353 (1976), quoting *Estes v. Texas*, 381 U.S. 532, 541–542 (1965).

{¶ 30} In a criminal proceeding, however, these important speech, press, and access rights can sometimes conflict with other fundamental guarantees. Perhaps most notably, the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution guarantee a criminal defendant's right to a fair trial and an impartial jury. *See Henry Cty.* at ¶ 23, 41, citing *State ex rel. Vindicator Printing Co. v. Watkins*, 66 Ohio St.3d 129, 138 (1993); *Kainrad* at 351; Ohio Const, art. I, § 10 ("In any trial, in any court, the party accused shall be

allowed . . . to have . . . a speedy public trial by an impartial jury . . . .").  "Pervasive, unfair, and prejudicial media coverage of a criminal trial can sometimes deprive a criminal defendant of this constitutional right."  *Henry Cty.* at ¶ 23, citing *Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966).  Although even "pervasive, adverse publicity does not inevitably lead to an unfair trial," a trial judge must, if necessary, take measures to mitigate the possibility.  *Nebraska Press* at 555-556.

{¶ 31} In considering measures that effectively balance these important constitutional rights in a particular case, a prior restraint cannot be the first resort.  *See Kainrad* at 352; *see also Nebraska Press* at 561 (explaining that neither the First nor the Sixth Amendment to the United States Constitution is afforded categorical precedence over the other).  Rather, before issuing an "order not to publish," the court must observe both substantive and procedural safeguards.  *Kainrad* at 352.  Substantively, the circumstances warranting a prior restraint must be "imperative" and it must "appear[] clearly in the record" both that the "defendant's right to a fair trial will be jeopardized" and that "there is no other recourse within the power of the court to protect that right or minimize the danger to it."  *Id.*  And, procedurally, "it is obligatory upon the court to hold a hearing and make a finding that all other measures within the power of the court to [ensure] a fair trial have been found unavailing and deficient."  *Id.*  Such findings "must be supported by evidence, not speculation."  *State ex rel. Chillicothe Gazette, Inc. v. Ross Cty. Common Pleas Court*, 2 Ohio St.3d 24, 25 (1982).

{¶ 32} These requirements apply even when the speech sought to be restrained relates to jurors' or prospective jurors' personal information.  *See id.*; *compare State ex rel. Beacon Journal Publishing Co. v. Bond*, 2002-Ohio-7117, paragraph two of the syllabus ("The First Amendment qualified right of access extends to juror names, addresses, and questionnaires, thereby creating a presumption of openness . . . .").  In *Ross Cty.*, the relator-newspaper filed a complaint in prohibition in the court of appeals, challenging a trial-court order that

prevented relator from publishing "'the names [sic] or the address of any prospective panelist or juror'" to the extent such information was learned in the courtroom. (Emphasis deleted; bracketed text in original.) *Id.* at 24, quoting the order. The court of appeals granted an alternative, and later a permanent, writ. *Id.* On appeal to this court, we affirmed on the grounds that the trial court had not held a hearing, had not adequately considered alternative measures, and had not supported its order with evidence. *Id.* at 25. We emphasized, "'[T]here is no reason for a trial court to [conclude] . . . that there will be prejudicial publicity . . . and to presume that such publicity will create a . . . threat to the administration of justice. . . .'" (Ellipses added in *Ross Cty.*) *Id.*, quoting *State ex rel. Dayton Newspapers, Inc. v. Phillips*, 46 Ohio St.2d 457, 468-469 (1976).

{¶ 33} Here, the amended jury provision constitutes a prior restraint in that it temporarily restricts the media from "publishing," "distributing," or "making available" jurors' or prospective jurors' "personally identifiable information," apparently regardless of how that information was obtained. *See Henry Cty,* 2010-Ohio-1533, at ¶ 20. Moreover, its issuance does not appear to comply with the procedural safeguards demanded by *Kainrad*. To be sure, the amended order includes certain "Findings of Fact" and "Conclusions of Law," including that (1) the circumstances of the case created "an imminent risk of mistrial, thereby threatening the fair-trial rights of all parties and the integrity of [the] proceedings" and (2) alternative safeguards, such as robust admonitions, instructions, and sequestration were "insufficient to mitigate the imminent risk of harassment and outside influence." But there is no indication that the court held a hearing, received evidence, or permitted those affected to be heard before determining that these circumstances required an order amounting to prior restraint. For that reason, the order's imposition of prior restraint is impermissible. *Ross Cty.*, 2 Ohio St.3d at 25. This is so even if some of the factual findings contained in the amended order are properly predicated on judicially noticeable facts.

**{¶ 34}** Even if it did comply with the hearing requirement of *Kainrad*, the amended jury provision would still be unenforceable to the extent it prohibits publication of information that is revealed in open court or from publicly available court records. *State ex rel. Natl. Broadcasting Co. v. Lake Cty. Common Pleas Court*, 52 Ohio St.3d 104, 113 (1990), overruled on other grounds by *State v. Schlee*, 2008-Ohio-545, ¶ 10, quoting *Craig v. Harney*, 331 U.S. 367, 374 (1947) ("It is well-settled, despite implications to the contrary in both *Kainrad* and *Kaufman*, that '[t]hose who see and hear what transpired [in the courtroom] can report it with impunity.'" [Bracketed material added in *Natl. Broadcasting*.]).

*2. The amended witness provision*

**{¶ 35}** The amended witness provision reads:

> Each witness has the right to object to "media coverage" in any form including but not limited to photographs, audio recording, video recording, and any form of transmission including live streaming. . . .
>
> Pursuant to Sup.R. 12(B)(2), any witness who objects to media coverage shall be afforded an opportunity to be heard by the Court outside the presence of media representatives and without media coverage. Media coverage of any objecting witness is prohibited, in and out of the Courtroom, prior to and during the objection hearing. If the objection hearing occurs in open court, any and all forms of media coverage—including audio recording, video recording, transmission, live streaming, and photography—shall be suspended during the hearing until the Court rules on the objection.
>
> The Court shall rule on the objection and, if granted, the Court shall make a finding on the record with sufficient specificity to support the restriction. The finding shall provide the reason(s) for

granting the objection, which may include, but are not limited to, protection of the witness's safety, privacy, or emotional well-being, or the need to ensure the integrity of the proceedings. Any witness whose objection to media coverage has been granted shall not be recorded, televised, or photographed, live streamed or transmitted in any form inside and outside of the Courtroom.

{¶ 36} In their amended complaint, the newspapers assert that the jury provision of the original order was impermissible under Sup.R. 12(B)(2) because it treated a witness's objection to being recorded as automatically prohibiting recording the objecting witness. The amended complaint does not explicitly invoke the Ohio Constitution as a basis of this claim. In their memorandum in opposition to Judge Baker Ross's motion to dismiss, the newspapers argue that the amended witness provision should still fail for three reasons. First, they argue that the amended witness provision fails to comply with Sup.R. 12(B)(2) because it does not "provide sufficient opportunity for all affected parties to be heard." Second, the newspapers say it violates the open-courts provision, Article I, Section 16, of the Ohio Constitution, because it excludes media from the hearing on a witness's objection when it occurs in open court. Finally, they argue that it impermissibly prevents them from recording the defendants—if they were to testify—even when they are not actually testifying.

{¶ 37} As explained above, both the Ohio Constitution and the United States Constitution independently protect the public's right to access court proceedings and to speak freely. *See Henry Cty.*, 2010-Ohio-1533, at ¶ 22; *Bloom*, 2024-Ohio-5029, at ¶ 48 ("our Constitution protects public access to court proceedings that extends further than the United States Supreme Court's interpretation of the free-speech and -press guarantees of the federal Constitution.").

16

{¶ 38} The newspapers' amended complaint does not specifically invoke the Ohio Constitution. Rather, their challenge to the witness provision was predicated on Sup.R. 12(B)(2). Sup.R. 12(A) provides that upon written request, and "[u]nless otherwise provided by law or local rule, the judge assigned to the proceeding *shall permit* audio, audio-video recording, broadcasting by electronic means, and taking photographs in court proceedings that are open to the public."[6] (Emphasis added.) Sup.R. 12(B) provides certain limitations on this permission. As relevant here, Sup.R. 12(B)(2) provides that "any victim or witness who objects to being recorded" must be permitted "the opportunity to be heard in advance of testifying."

{¶ 39} But as this court has explained, it is not *only* the objecting witness who must be given an opportunity to be heard. Rather, when faced with a witness's objection, the trial court must give the persons affected (e.g., print or broadcast media covering the proceedings) the opportunity to respond to the possibility of any restriction. *Geer*, 2007-Ohio-4643, at ¶ 19. Similar to the procedure applicable to prior restraints, discussed above, the court must consider the reasons given for the objection, weigh the asserted harm against the benefits of public access, and make findings "based upon evidence in the record." *Id.* at ¶ 18-20. A recording restriction based on a witness's objection without notice and an opportunity for all those affected—including the media—to be heard is grounds for issuance of a writ of prohibition. *Id.* at ¶ 20.

{¶ 40} The amended witness provision runs afoul of Sup.R. 12 for at least two reasons. First, the provision provides that an objecting witness will be heard

---

6. The local rules of the Summit County Court of Common Pleas do not provide otherwise. *See* Summit C.P., Gen.Div., Loc.R. 14.01, available at https://www.akronlegalnews.com /rules_of_court/common_pleas/general_division_14 (accessed Feb. 12, 2026) [https://perma.cc/WF95-93SU] ("[T]he Court shall permit the broadcasting, recording and taking of photographs in Court proceedings. Requests for permission to use such electronic recording or photographic equipment shall be in writing.").

"outside the presence of media representatives and without media coverage." Even if unintentionally, this language appears to prevent "media representatives" from being heard on the propriety of the recording restriction being considered. This is impermissible, because, as representatives of the public, the media have a right to be heard. *See Geer* at ¶ 20.

{¶ 41} Second, the amended witness provision provides that "any and all forms of media coverage" are "suspended" during an objection hearing, even "[i]f the objection hearing occurs in open court." But unless Judge Baker Ross properly closes the objection hearing—which would require its own procedural prerequisites—proper requests to record open proceedings must be granted, Sup.R. 12(A), subject to certain restrictions contemplated by the remainder of Sup.R. 12; for example, those contained in Sup.R. 12(A) (judge may specify placement of recording equipment and operators), Sup.R. 12(B)(1) (prohibiting recording of conferences among counsel and their clients or at the bench), Sup.R. 12(D) (limiting the number of operators and recording systems and providing for pool representation). *See Geer* at ¶ 16 ("If . . . the request [to record] is granted, the media rightfully expect that there will be no restrictions other than those stated by [Sup.R. 12]."); *State v. Sowell*, 2016-Ohio-8025, ¶ 51, quoting Sup.R. 12(A) ("[A] trial court may not exclude cameras from 'court proceedings that are open to the public.'").

{¶ 42} The newspapers further argue that the amended witness provision is overbroad because it prohibits recording of defendants—assuming they object to being recorded—even when they are not actively testifying. We agree.

{¶ 43} The amended witness provision provides that a "witness" whose objection has been granted "shall not be recorded . . . inside and outside of the Courtroom." As the newspapers point out, however, we have construed the word "witness" in these circumstances to exclude "a defendant who intends to testify but is not actually testifying." *Lake Cty.*, 52 Ohio St.3d at 114. In that case, we

explained that the "rule against photographing witnesses who object serves the purpose of avoiding distractions that might interfere with the witness'[s] ability to testify." *Id.* Because that purpose would not be served by a ban on photographing a defendant while he or she is off the stand, "[a] defendant's intention to testify is not a sufficient basis for the court to completely forbid relators to take pictures of him in the courtroom." *Id.*

### C. Existence of Alternative, Adequate Remedies

{¶ 44} Finally, Judge Baker Ross argues that a writ of prohibition cannot issue because the newspapers possess adequate remedies in the ordinary course of the law. She says that the newspapers could, for example, institute a mandamus action to compel access to records or appeal from any contempt or sanction order imposed for violating the order.

{¶ 45} However, it has long been settled that a writ of prohibition is the proper remedy to address courtroom restrictions that are alleged to violate the freedom of the press. *See, e.g.*, *Phillips*, 46 Ohio St.2d 457, paragraph one of the syllabus; *Kainrad*, 46 Ohio St.2d at 355; *In re T.R.*, 52 Ohio St.3d 6 (1990), paragraph one of the syllabus, overruled on other grounds by *Bloom*, 2024-Ohio-5029. Indeed, we have stated that prohibition may be "the *only* remedy available to nonparties who wish to challenge an order which restricts the rights of free speech and press." (Emphasis in original.) *State ex rel. News Herald v. Ottawa Cty. Common Pleas Court., Juv. Div.*, 77 Ohio St.3d 40, 43 (1996). Nonparties to the court proceedings, like the media, are often without adequate remedies in the ordinary course of the law because "closure and gag orders," like the amended order at issue here, are interlocutory in nature. *T.R* at 10. Further, in *Ottawa Cty.*, we granted a writ of prohibition preventing enforcement of a "prior restraint . . . order [that] prohibited publication of information legally obtained" when the relators were threatened with criminal contempt if they violated the order. *Ottawa Cty.* at 45.

**{¶ 46}** In light of these authorities, prohibition is the proper vehicle for the newspapers' claims, and the potential that the newspapers might later successfully appeal an order punishing them for violating the amended order is not an adequate remedy precluding issuance of the writ. Moreover, even if mandamus were an appropriate vehicle for the newspapers' claims, that remedy is not available in the ordinary course of law, because mandamus, like prohibition, is an extraordinary remedy. *State ex rel. Taylor v. Glasser*, 50 Ohio St.2d 165, 166 (1977) ("Mandamus and prohibition are extraordinary remedies, to be issued with great caution and discretion and only when the way is clear.").

### D. Motion for Leave to File Revised Opposition to Motion to Dismiss

**{¶ 47}** On February 11, the newspapers filed a motion for leave to file a revised memorandum in opposition to Judge Baker Ross's motion to dismiss. According to the newspapers, the only difference between their revised memorandum in opposition and their original memorandum is the inclusion of an affidavit by an Akron Beacon Journal Reporter covering the trial, which the newspapers say is additional support for their position that the amended order does not provide them an opportunity to be heard on a witness's objection.

**{¶ 48}** For the reasons set forth above, we find it unnecessary to consider the new material included within the newspapers' proposed revised memorandum in opposition. We therefore deny as moot the newspapers' motion for leave to file a revised memorandum in opposition to the motion to dismiss.

### III. CONCLUSION

**{¶ 49}** For these reasons, we grant a peremptory writ of prohibition preventing Judge Baker Ross from enforcing (1) the amended jury provision's prohibition on publication of jurors' or prospective jurors' personal information (a) until she holds a hearing and makes the necessary findings from evidence in the record and (b) to the extent that the amended provision prohibits dissemination of information revealed in open court or from publicly available court records, and

(2) the amended witness provision pertaining to the recording of objecting witnesses, to the extent that it (a) prohibits representatives of the media from attending and being heard at a witness's objection hearing, (b) prohibits recording of objection hearings that occur in open court, and (c) prohibits recording of defendants when they are not testifying. We deny as moot the newspapers' motion for leave to file a revised memorandum in opposition to the motion to dismiss.

Writ granted.

_____

Faruki P.L.L., John C. Greiner, Melissa L. Watt, and Griffin R. Reyelts, for relators.

Elliot Kolkovich, Summit County Prosecuting Attorney, and Jennifer M. Piatt, Assistant Prosecuting Attorney, for respondent.

_____